(78 South. 237)

No. 22604.

## ROGERS v. LOUISIANA RY. & NAV. CO.

(Feb. 25, 1918. Rehearing Denied April 1, 1918.)

*(Syllabus by Editorial Staff.)*

1. DEATH ☞58(1)—PRESUMPTIONS—CONTRIBUTORY NEGLIGENCE.

Where the presence of deceased, who was lying down between the rails of a track, was unaccounted for, it would be assumed as a legal conclusion that he was guilty of gross negligence amounting to recklessness.

2. DEATH ☞58(1)—BURDEN OF PROOF—LAST CLEAR CHANCE.

Where deceased, killed when lying between the rails of a track, was guilty of gross negligence, his widow could recover only if she showed that the accident might have been avoided by the exercise of ordinary care on the part of defendant's engineer after the danger of the situation was or should have been discovered.

3. RAILROADS ⊜➔398(3)—INJURY ON TRACK—
NEGLIGENCE—EVIDENCE.

In an action by the widow of one killed
while lying between the rails of a track, evi-
dence *held* not to show a want of exercise of
ordinary care on the part of defendant's en-
gineer after the dangerous position of deceased
was or should have been discovered.

Appeal from Thirteenth Judicial District
Court, Parish of Rapides; James Andrews,
Judge.

Action by Mrs. Sadie Rogers against the
Louisiana Railway & Navigation Company.
Judgment for plaintiff, and defendant ap-
peals.    Judgment reversed, and suit dis-
missed.

Wise, Randolph, Rendall & Freyer, of
Shreveport, and Thornton, Gist & Richey, of
Alexandria, for appellant.  R. F. Liebler, of
Alexandria, for appellee

LECHE, J.  On the night of October 15,
1916, between 10 and 11 o'clock, a passenger
train of defendant company ran over and
killed Ed. Rogers, who was lying down be-
tween the rails of defendant's railroad track
just outside the limits of the city of Alex-
andria.

The widow of Rogers, alleging that her
said husband was killed by the negligence
of the employés of defendant in charge
of said train, claims damages in the sum of
$20,000 as a result of said killing and prays
for judgment accordingly.

The district court allowed her $5,000, and
defendant appeals.

The train which killed the deceased left the
station in Alexandria at about 10:25 p. m.,
and was proceeding on its way to New Or-
leans, when, after passing the Alexandria &
Western Railroad crossing, the engineer rec-
ognized the form of a human being lying flat
on the ground, between the rails some 50 feet
ahead of him.  S. E. Angle, the engineer in
charge of the train, further testified that he
was then running at a speed of about 20
miles per hour, and immediately applied the
brakes, but was only able to stop his train
after the engine, tender, and baggage car had
passed over the body of the man.

The mangled form of Ed. Rogers was then
picked up under the rear end of the baggage
car and brought back to Alexandria.  The
engineer further says that Rogers was ly-
ing flat on his back, lengthwise with the
track, his head away from the engine, abso-
lutely motionless until just before the engine
struck him, when he slightly raised his head
as if trying to see what was coming.  He fur-
ther says that he had seen a dark object on
the track some 300 feet ahead, but never sus-
pected that it was a human being, until about
50 feet from it, and that with all the dili-
gence he could exercise it was impossible for
him to stop his train any quicker than he
did.

The place where the accident occurred is
about 204 feet east of the crossing of the Al-
exandria & Western Railroad, on the out-
skirts east of the city of Alexandria.  On one
side of the track is an open field, on the other
side a thicket.  There are no human hab-
itations in that neighborhood, and there are
no public roads near or crossing the rail-
road track.  In other words, it is a place
where no one would reasonably expect to
find any human being between 10:30 and 11
o'clock at night.

[1, 2] The presence of Rogers at that place
is unaccounted for and will likely forever
remain a mystery.  Was he sick, intoxicated,
or did he want to depart this life on a rail-
road track; no one knows.  In the absence
of any explanation, it must be assumed as
a legal conclusion that he was guilty of gross
negligence amounting to recklessness, and
his widow can only recover if she can clearly
show that the accident might have been
avoided by the exercise of ordinary care on
the part of the locomotive engineer after the
danger of the situation was, or should have
been, by him discovered.

[3] A great deal of testimony was elicited from several locomotive engineers on this point. Some testified that they could distinguish a human body lying as described by Engineer Angle, anywhere from 350 to 500 feet ahead of an engine; but those who testified to this effect all admit that it is merely a matter of opinion on their part, and not one of them ever had the misfortune to be situated as was the engineer on the train that killed Rogers. One of defendant's engineers testified that he once in the nighttime, ran over a man who was lying across the track on a trestle; that the man's body was between the ties and his legs across one of the rails; that he had one hand sticking up and looked to him like an animal of some kind; that he was only able to distinguish the object within 100 to 150 feet, was running 30 miles an hour, and was unable to avoid the accident.

As a matter of fact, and it is admitted by most of the engineers who were placed upon the witness stand, it is extremely difficult at night to distinguish objects on railroad tracks, and the distance at which they can be recognized varies with their size and shape, their color and the color of the background, their motion or lack of motion, weather conditions, and possibly many other surrounding circumstances. The place where they are seen may sometimes offer a clue to their identification and at other times mislead the mind as to their real nature. Most frequently any object on the track at nighttime looks dark, and, as stated by these engineers, if the speed of passenger trains was checked or if the trains were stopped every time dark spots appear on the track, it would be impossible to efficiently operate passenger trains. The testimony of Angle appears to us to be truthful, to comport with reason, and to outweigh the opinions of experts who have never actually been in a similar predicament.

Our conclusions are that the train which caused the death of plaintiff's husband was being operated with ordinary care and that plaintiff's demand should be refused.

It is therefore ordered that the judgment appealed from be set aside and reversed, and plaintiff's suit dismissed, with costs.