BRUNOT, J.
 

 This application grows out of a suit for damages on account of the death of plaintiff’s husband, who was run over and killed by one of defendant’s trains on March 15, 1925, in the outskirts of the town of Ruston, La. The plaintiff sued for $10,000 in her own right, and, as tutrix to her two minor children, for $10,000, in the proportion of $4,-500 for the oldest and $5,500 for the youngest child, with interest on said sums from judicial demand and for costs. Defendant excepted to the suit upon the ground that the petition did not disclose a cause of action. The exception was referred to the merits, defendant filed its answer, the case was tried, and a judgment was rendered in favor of plaintiff for $8,000, with 5 per cent, per annum interest thereon- from judicial demand and for costs of the suit; one-half of said judgment being in plaintiff’s favor, individually, and one-half in her capacity as natural tutrix to the minors. From this judgment defendant appealed. The Court of Appeal affirmed the judgment, and defendant, as relator in this 1 proceeding, applied to this court for a certiorari or writ of review. A rule nisi issued, and in response thereto the record- haS been sent up, and it is now before us.
 

 Relator’s assignment of errors is quoted in full:
 

 “The district court and Court of Appeal are in error in holding that it is ever the duty o£ a locomotive engineer to anticipate the presence of a dead-drunk trespasser on the track, and that it is the duty of the engineer to stop a passenger train as soon as he Sees an object on the track ahead of him, and before he has an opportunity to discover or realize that it is the body of a man. '
 

 “The district court and the Court of Appeal both have confused the duty of an engineer to lo.ok out for pedestrians in a populous center
 
 *693
 
 •with the duty of the engineer toward the dead-drunk body of a trespasser who has passed the pedestrian stage.
 

 “Both the district court and the Court of Appeal are in error in assuming and holding that there is more likelihood of a dead-drunk trespasser on railroad tracks in a populous center than in a rural district.”
 

 The record discloses that the deceased had imbibed too freely, in the town of Ruston, of some form of liquid which produced intoxication. It is sad to relate that, regardless of the Eighteenth Amendment, the Volstead Act (U. S. Comp. St. § 10138V4 et seq.) and the Hood Law (Acts 1921, Extra Sess. No. 39), regardless of the, millions in money that the overburdened taxpayers are annually contributing to enforce these provisions of law, regardless of the consistency, and, in some instances, the doubtful extent to which the •courts of the land have gone to maintain the supremacy of these laws and to punish transgressors of them, the frequency of drunkeness, attended with fatal consequences, 'does not seem to have appreciably lessened in this country.' It is needless to ask why this is so, because experience teaches us that man-made laws are powerless to stir the conscience or regulate the morals of willful or wayward human beings. But, he that as it may, the deceased found intoxicating liquor in Ruston. He imbibed too freely. One of his acquaintances offered to take him home in an automobile. He spurned the offer, and decided to negotiate the distance on foot and alone. I-Ie reached the railroad track, and started to walk down the track to his home. He either stumbled and fell, or decided to take a nap. When the passenger train came along he was lying upon his stomach, in the middle of the track, with his toes on the ground and his heels in the air. The engineer says that it was dark, but he had a good headlight, and, shortly after leaving the station at Ruston, he saw an object on the track about 300 feet ahead of the train; that he could then have stopped the train and avoided the accident, but he did not know that the object was a human being, and he did not discover this fact until the locomotive was about 50 feet from it, at which time he shut off the power, applied the brakes, and did everything humanly possible to avoid the accident. It is shown that the train was properly manned; that all of its equipment and operating appliances were in perfect order; and that the train was stopped in, approximately, 100 feet after striking the deceased.
 

 The defenses set up in the answer were that the victim of the accident was subject to heart disease, and that he was dead when the train struck him, and, in the alternative, that deceased was a trespasser on defendant’s property, and that his gross negligence was the sole cause of his death.
 

 There is no evidence in the record tending to show that the heart of the deceased was not normal or that he was afflicted in any manner likely to cause his sudden death. The proof is that he was in good health, but was intoxicated when last seen, a few moments before his death; that he was on the railroad track walking south towards his' home; that the clearance between the pilot of the locomotive and the cross-ties on which he was lying was only 8 inches, a circumstance which renders it extremely improbable that the locomotive could have passed over his body without killing him. This proof, in connection with the fact that the presumption of death is not sanctioned by our law except under the special circumstances and in the particular instances enumerated in the Civil Code, leads us to the same conclusion reached by the trial judge and the Court of Appeal, viz.- that the deceased was killed by defendant’s train.
 

 In considering the alternative defense, which defendant appears to rely upon, the Court of Appeal says:
 

 “While it is alleged and shown that the deceased was guilty of the grossest contributory
 
 *695
 
 negligence in getting drunk and lying down on the track, it is not denied that if the engineer after seeing the deceased prostrate and helpless on the track, could, with due diligence and care, have stopped the train in time to avoid killing him, the defendant is liable under the 'doctrine of the last clear chance. McClanahan v. V. S. & P. R. Co., 111 La. 785, 35 So. 902; McGuire v. V. S. & P. R. Co.,
 
 46
 
 La. Ann.
 
 1546,
 
 16 So. 457; Harrison v. La. W. R. Co., 132 La. 763, 61 So. 782; Jones v. Mackay Tel. Cable Co., 137 La. 121, 68 So. 379; 20 R. C. L. 138; 29 Cyc. 5-30.”
 

 The foregoing would be true if the engineer knetv that the object on the track was a human being, or if the engineer had reason to believe that the object was' a human being. The real question to be 'determined is whether the engineer is shown to have had knowledge of the fact that, in the particular place where the deceased was killed, the track'was used daily as a pathway by pedestrian® going and returning to their homes from that town, and that these people lived in the vicinity of Ruston near the railroad right of way. The proof is that the engineer was aware of these facts. Counsel for defendant relies upon the cases of Rogers v. L. R. & N. Co., 143 La. 58, 78 So. 237; and Tyer v. G., C. & S. F. R. Co., 143 La. 177, 78 So. 438.
 

 In the Rogers Case the court said:
 

 “The place where the accident occurred is about 204 feet east of the crossing of the Alexandria & Western railroad, on the outskirts east of the city of Alexandria. On one side of the track is an open field, on the other side a thicket, There are no human habitations in that neighborhood, and there are no public roads near or. crossing the railroad track. In other words, if is a place where no one would reasonably expect to find any human being between 10:30 and 11 o’clock at night.”
 

 There is a marked similarity in this case and the case at bar, in that in each case the engineer saw the object on the track when about 300 feet away, and did not discover that it was a human being until within about 50 feet away, when it was too late to avoid the aeeident; but there is a marked dissimilarity in the two', in that in the Rogers Case the body was on the track at a place where ‘-.‘there are nu human habitations in that neighborhood, and there are no public roads-near or crossing the railroad track. , In other words, it is a place where no one would reasonably expect to find any human being between 10:30 and 11 o’clock at night,” whereas, in the case at bar, the body of tbe deceased was on the track between two public crossings on the outskirts of the town of Ruston, where there were numerous habitations near the track, and where the track was commonly used as a pathway by pedestrians.
 

 In tbe Tyer Case tbe deceased was lying face down upon tbe track in the woods, remote from human habitation. No one would expect a human being to lie down upon tbe track in such a place. The engineer discovered that the object he saw was a human being when the locomotive was within 60 or 70 feet of it, when it was too late to stop the train in time to avoid the aeeident. The cases are not authority for holding that au engineer, after seeing an object on the track is, under all circumstances, justified in maintaining the speed of his train until he is satisfied
 
 that
 
 the object he has seen on the track is a human being. Tbe location of the object, tbe public’s use of the track, the proximity of habitations thereto, if within the knowledge of the engineer, are elements in determining whether or not, under the particular circumstances shown, the engineer was negligent, and whether he could by timely action have prevented the accident. There is no fixed rule in the jurisprudence of this state determining when the engineer shall stop his' train after he discovers that some object, the nature of which he does not know, is on the track, but the opinions of this court in such cases are based primarily upon the special facts of each case.- When it appears that the engineer knew that a portion of the track was used by, pedestrians daily, and that these pedestrians lived near the right of way of the
 
 *697
 
 railroad, he must exercise greater caution in the operation of his train than will be required of him under other circumstances.' After citing several authorities from other jurisdictions, the Court of Appeal says:
 

 “In the case at bar, the deceased was killed in the south part of the town of Ruston, which has a population of about 5,000, between two street crossings, one known as South Line street crossing and the other to the south of it known as Price’s crossing. Price street is something over 500 feet south of South Line street, which is probably not kept up by the city, and is but little used, except when it is dry. On or near this street, however, there is a considerable settlement known as Tolber’s quarters and Price’s quarters, and we infer from the testimony that a great many families, probably twenty-five or thirty, live in or near this street. There are also dwellings near the right of way between these crossings. The people who live down there, or a great many of them, in going north to the main portion of the town, rise the railroad track as a footpath in wet weather (the deceased was killed on a rainy night). One witness estimated that from twenty-five to seventy-five persons walked the track each day where the deceased was killed, •and another estimated that from forty to fifty used the'track each day as a footpath.
 

 “Mr. Thigpen, the sheriff, said that ‘on the east side of the track from South Line street ■crossing on down there is darkies, and there is white people living something Ijke 200 yards. On the other side something like 300 or .400 .yards it is pretty thickly settled.’ He said that the greater portion of those living on the west side of the track used another route in going to town, but those living on the east side used the track. The testimony shows that just op.posite the right of way where the deceased was run over there is a small mercantile establishment where people congregate, at the South Line street crossing.”
 

 With these facts proven, and it appear ing that the engineer had knowledge of them, •the Court of Appeal held that the authorities relied upon by defendant’s counsel do not apply, and that the failure of the engineer to exercise extra precaution to avoid injury to persons who might be on defendant’s track at the point where the deceased was killed was negligence, for which the defendant is'liable under the doctrine of the last clear chance. The court correctly Says:
 

 “The precautions to be adopted and the steps to be taken in aid of safety increase as the danger of accident and injury increases. Ortoland v. M. L. & T. R. & S. S. Co., 109 La. 902, 33 So. 914; Eichorn v. N. O. & C. R. L. & P. Co., 112 La. 237, 38 So. 526, 3 Ann. Cas. 98; Williams v. Mo. Pac. R. Co., 155 La. 354, 99 So. 286.”
 

 We think the ruling of the Court of Appeal is correct.
 

 The evidence shows that the deceased was 39 years old. He was a small farmer, and, when not occupied on the farm, he did hauling in the neighborhood. He was addicted to strong drink, and sometimes drank to excess, but it is testified that he not only supported his own family, but he was the chief support of his father and mother. Under these circumstances the award of $4,000 to his penniless widow and a like sum to his two minor children, of tender years, is not excessive.
 

 For these reasons the judgment under review is affirmed, at relator’s cost.