No. 3170

Second Circuit

BRANCH v. MISSOURI PACIFIC RAILROAD COMPANY

(December 21, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Railroads—Par. 63, 64.**
It is the duty of the driver of an automobile, before attempting to cross two or more parallel railroad tracks to stop, look and listen for moving trains, cars or locomotives before entering upon the first track and to continue to look and listen for them until he is over all of the tracks.
Sullivan vs. Tremont & Gulf Ry. Co., 4 La. App. 358.
Baltimore & Ohio R. R. Co. vs. Goodman, — U. S. —, (decided October 31, 1927, and not yet reported).
Young vs. La. W. Ry. Co., 153 La. 129, 95 So. 511.

Appeal from the Fifth Judicial District Court of Louisiana, Parish of Richland. Hon. John R. McIntosh, Judge.

Action by T. B. Branch against Missouri Pacific Railroad Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

George Wesley Smith; Warren Hunt, of Monroe, attorneys for plaintiff, appellant.

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues defendant for $1900.00 with legal interest from judicial demand as damages alleged to have

been sustained by him as the result of a collision between an automobile owned and being driven by him and a box car moving on defendant's railroad at a public crossing in the town of Rayville, Louisiana. He claims $600.00 as the value of his automobile which, he avers, was damaged beyond repair, $300.00 for torment and anguish he says he suffered by fear of injury or death of himself or children who were in the automobile with him at the time, and $1000.00 as punitive damages.

He avers that he was driving west with three of his young children in a "Ford" automobile on Rosa street in the town of Rayville, Louisiana; that before crossing defendant's railroad tracks he brought his car to a stop at the regular "stop" sign and looked up and down the railroad tracks to ascertain whether or not he could then safely cross the tracks; that a box car was standing on the main track with its end nearest Rosa street three or four feet from the street and immediately north of the box car was a high pile of timber, and that the box car and pile of timber together with defendant's freight depot screened his view up the track or northward for about five hundred yards, and that down the track, or southward, no moving cars were in sight. That at this point there is a main track and a spur track. That seeing no moving cars on the north or the south he proceeded carefully and slowly to cross the tracks, and that after crossing the main track and as he was about to cross the spur track a box car moving from the northerly in the southerly direction on defendant's spur track and which he was prevented from seeing by the box car, pile of timber and freight depot struck his automobile and dragged it down the track for approximately seventy-five feet. That the box car had been "shunted" and was under no one's control and there was no signal or device thereon to give warning of its approach and that there was no one stationed at the crossing to warn persons about to cross the tracks of impending danger.

Defendant denied negligence and alleged that the car had been "kicked" in the customary way and was in charge of a trainman who was on top and in control of it, and alleged that the accident was caused wholly and solely by plaintiff's own carelessness and recklessness in failing to stop, look and listen for cars moving on its railroad tracks at a time and place and under circumstances where such precautions would have been effective; and that he failed to exercise any of the precautions required of him by law for his own protection and safety and that such omission was the sole and immediate cause of the accident.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit and he appealed.

## OPINION

In order to reach a correct decision in this case it is only necessary to consider plaintiff's own testimony and the physical facts at the time and place of the accident.

He testified that he and three small boys were in a Ford automobile traveling west on Rosa street; that when he arrived within from twenty to thirty steps of defendant's railroad track he stopped the automobile and looked both up and down the tracks; that the track to the south was clear, but that north, immediately beyond the freight depot, were a locomotive and some box cars which seemed not to be moving, and also north of and just clear of the crossing a box car was standing; that thereupon he proceeded

slowly to attempt to cross the tracks, and had gotten over the first or main track and was within about eight feet of the second or spur track when his attention was attracted to some one yelling to him to warn him he was in danger, and that he then saw a box car moving southward toward him on the spur track at about eight miles an hour, whereupon, conceiving a collision to be inevitable, he attempted to turn his automobile to his left or parallel to the track, in the hopes that the oncoming box car would only strike it a glancing blow and knock or push his automobile away from the track, but that it seems he had gone further over on or was closer to the spur track than he had supposed, and his automobile was caught by the moving box car and dragged down the track a distance of seventy-five feet.

He further testified that he had been driving over the crossing in question four times a day for several months.

Further testifying, he said:

"Q. Now when did you first discover the moving box car?

* * * *

"A. I was in about I would say eight feet of it, going or coming west, coming down the grade; you see, when I drove up on the east side of the main line and come to a halt, this box car that struck me was directly, must have been directly behind the car that was 'spotted' on the main line, and it being lower, it being on a lower track than the car (on the main line) was, (the car) that was on the main line hid the view of the (moving) car entirely; because I was lower, you see, than the car (on the main line) was * * *.

* * * *

"Q. And the timbers, together with the box car, hid your view of how much of the spur track?

"A. Well, when I got in view of the timber the box car was not in my way then of seeing anything, but as my car came down over the incline the top of my car hid the view, top view of the box car that struck me, see, and the timber hid the bottom view of it.

* * * *

"Q. Then, what did you hear?

"A. I heard a man hallooing and heard a man whistle.

"Q. You know where this man was?

"A. I did not. I could not see him.

* * * *

"Q. Mr. Branch, at what rate of speed did you say you were going, from the time you stopped your car until you were hit—approximately?

* * * *

"A. Well, I was going—my car was in low gear and I wouldn't say I was going over five or six miles an hour; as a rule, a Ford car won't travel much faster than that in low gear.

"Q. Did you ever get out of low gear before you were hit?

"A. I never got out of low gear until I got on top of the track, then I turned my car in high gear when I turned down the incline.

"Q. Did your speed increase above six or eight miles an hour at any time, or did you keep that up?

"A. Well, I suppose perhaps it did, because when you turn a Ford car into high gear it will pick up speed, especially if it is going down grade.

"Q. How fast do you think you were running at the time you were hit?

"A. Well, at the time I seen this car, my car may have been rolling at seven or eight miles an hour, may have been rolling that fast.

* * * *

"Q. Were you driving on the right-hand or the left-hand side of the road approaching that crossing?

"A. Well, I couldn't say; there was nothing else in my way; whether I was driving directly in the middle of the road or to the right of the road.

"Q. You were either one or the other?

"A. I was nearer, I suppose, the center of the road.

* * * *

"Q. There is a roadway, is there not, running between Cook's spur and the main line?

"A. There are south of the highway?

"Q. Running south from the highway?

"A. Yes, sir.

* * * *

"Q. Then, if you were twenty feet east of the main line, the east rail of the main line, and the main line was five feet in width, and the west rail of the main line was twenty feet or twenty-five feet east of the east rail of Cook's spur, that would make a distance of your car from the east rail of Cook's spur, of approximately forty-five feet, would it not?

"A. Yes, sir.

"Q. And you state you were traveling around between six and eight miles per hour most of that distance?

"A. Yes, sir.

* * * *

"Q. Then how do you account for the fact, Mr. Branch, that the freight car moving, you say, approximately at the same speed, six or eight miles per hour?

"A. Best I could tell of.

"Q. * * * travel the distance immediately behind the spotted car which was only two feet from the crossing and got there at the same time that you traveled the distance of forty-five feet?

"A. Because we had something similar, the same distance to run.

* * * *

"Q. Would you mind locating on this map the approximate location of the box car, if you know, that struck you, at the time you looked? Just mark it on there with a pencil.

"A. At the time I stopped my car?

"Q. Yes.

"A. At the time I stopped my car this box car must have been right in about this place. (Witness marks the spot XY.)

* * * *

"A. * * * This car struck me right here. (Witness indicates on the map by the letters EF.)

* * * *

"Q. Then if the car struck you at the point EF, when you got to the point ZZ if you had looked north is it not a fact the point ZZ, being four feet east of the east rail of the main line, is it not a fact that you had a plain and unobstructed view of the car approaching you?

"A. If I had looked.

"Q. If you had looked?

"A. Yes, but I had; I didn't look, because I had already observed the view of the track both ways.

"Q. And in observing that view you saw a box car standing on the main line behind which you couldn't see?

* * * *

"A. Yes, when I first come to my halt on the east side of the track why this box car was standing there loose without anything hold of it.

"Q. You could not see behind that car?

"A. I couldn't, no; I could not see behind this car.

"Q. You never looked again after you started up?

"A. I never looked neither way only until this car that struck me came in my sight; I had looked out ahead; I had to look out ahead then for cars; I didn't look for box cars, because I didn't think there was anything in my way of that kind.

"Q. You didn't notice the car that struck you until someone, you heard some one hallooing, isn't that what you testified?

"A. No, sir. I did.

"Q. Then, as a matter of fact, you didn't look to the right or left after your first stop until you heard someone yelling that attracted your attention?

"A. I did.

"Q. You kept your eyes straight ahead?

"A. I certainly did.

"Q. Notwithstanding the fact that you had seen a box car sitting on the main line which made the crossing of the spur somewhat blind to you?

"A. That is right.

"Q. Now, Mr. Branch, I will ask you to state whether or not, even after getting on the main line, if you had looked to the right, running at a speed of six to eight miles an hour, whether or not you could have then turned to the left and avoided striking the car?

"A. I could if I had had any idea there was anything of the kind I could have saved myself when I was on top of the track, but after I turned down this incline I could not save myself, because I killed my motor as I was trying to put on the brakes to stop. * * * I thought my car was in neutral, throwed the brakes in, and it stopped my motor.

* * * *

"Q. Don't you know, as a matter of fact, that if your car was in neutral, that

nothing you could do with your brakes would have any effect on your motor?

"A. Well, I can't say just how I handled my feet at that time, but I will say that my motor was killed when it was struck by this car."

Thomas Jefferson Parker, one of the boys in the automobile with plaintiff, was asked:

"Q. Tell us, in your own way, how the accident came about?"

And he said:

"A. Well, we came up the road; he stopped just before he got to the crossing; and the engine and all were standing still down at the north end of the depot, and it was one or maybe more, I don't remember exactly how many cars there were, right at the crossing, and there was about one or two layers of heavy timbers between the switch and the main track and it hid the view from the box car; as we come over there was a brakeman running from the north end of the car southward to the brake beam; he whistled or either hallooed; it was a mighty shrill halloo; when he hallooed, right after he hallooed, I seen it was about four or maybe six feet from the car; I just had time to get out of the way of it without getting hurt badly; it bruised this leg a little; caused me to fall.

"Q. You jumped out of the car?

"A. I jumped from over the door."

The testimony in the record makes it clear to us that if plaintiff had kept a proper lookout he would have seen the moving box car before he reached the east rail of the main track and had ample time and opportunity to avoid the accident. Indeed, even after getting upon the main track he still had time and opportunity to save the situation, for there was a road leading off from the crossing to the south between the main track and the spur track down which plaintiff might have turned and driven his automobile and been safe.

Plaintiff insists that under the authority of Hampton vs. L. & N. W. R. R. Co., 2 La. App. 171, it was not his duty to again stop or look or listen after having stopped and looked before entering upon the main track; but that case has no application here. All that that case holds is that it is not necessary to stop between parallel tracks. It does not hold that in crossing parallel tracks it is not necessary to continue to look and listen for approaching cars as long as one is in danger of being struck by a moving car.

The trial judge, who heard and saw the witnesses testify, gave judgment for the defendant. His judgment is clearly right and it is therefore affirmed.