**DEL BUONO v. ILL. CENT. R. R. CO. ET AL.**

---

(November 18, 1929. Opinion and Decree.)
(December 16, 1929. Rehearing Refused.)

---

H. W. Kaiser and J. H. Hammel, Jr., of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendants, appellees.

JANVIER, J. Plaintiff sues for injuries sustained on May 2, 1926, while he was riding in an automobile which was in collision with a train of defendant railroad company at a road crossing in Jefferson Parish. Defendant, Gustave Adolph, was the owner of the automobile, which had been hired by employers of plaintiff to take plaintiff and certain other persons to view land which was for sale. Alleging that the collision was caused by the joint negligence of the railroad employees and the driver of the automobile, plaintiff sues both the railroad company and the owner and lessor of the automobile.

The case was tried by a jury, which rendered a verdict in favor of defendant railroad company, but which was not able to agree as to the liability, vel non, of the defendant Adolph, and reported a mistrial as to that defendant. So far as the record shows, the case against Adolph was never again tried, and since no judgment was rendered, there was no appeal, and that matter is not now before us, the sole question involved here being whether or not there is any liability in the defendant railroad company.

Plaintiff was an employee of Johness Realty Company. He had interested a prospect in certain land in Jefferson Parish

and on the Sunday afternoon in question he and another employee of the realty company, one Jackson, desired to take the prospect to view the land. The realty company had an arrangement with defendant Adolph under which Adolph furnished on request automobiles and drivers whenever called on to do so. The party visited the land, but did not get out of the automobile, as a heavy rain had come up. After standing near the lots which the salesmen were trying to sell to the prospect, it became apparent that the rain was going to continue and the party decided to return to New 'Orleans. In doing so they chose a route which crossed two tracks of defendant railroad company. The first track was crossed in safety. About one hundred feet beyond was the second track. On the second track the collision occurred. The train had approached from the right side of the automobile. There is considerable dispute as to whether the train struck the automobile or the automobile ran into the side of the locomotive. We are of opinion that a determination of this dispute is not necessary.

Plaintiff was in the rear of the automobile on the left side. All of the windows on the right side, from which the train approached, were closed. The downpour was terrific. It was about four o'clock in the afternoon and ordinarily no lights would have been required, but, as a result of the extraordinarily heavy rain, it was more or less dark.

The record convinces us beyond the shadow of a doubt of the following facts:

First. The electric locomotive headlight was burning.

Second. The automatic locomotive bell was ringing.

Third. The locomotive whistle had been blown several times while the locomotive was approaching the crossing.

Fourth. The engineer was on the lookout, but was prevented by the locomotive boiler from seeing the automobile which had approached from the other side.

Fifth. The engine fireman was not on the lookout, as he was engaged in firing the boiler.

Sixth. The train was traveling at a speed of between fifteen and twenty-five miles an hour.

The above facts are practically admitted. It is contended, however, that liability in the railroad company results from the fact that the range of the headlights was so obstructed by the terrific downpour that the engineer could see only a short distance ahead, and that the speed was such that the train could not be stopped within the distance illuminated by the headlight. In other words, it is contended that under all circumstances and in all localities a locomotive must be operated only at such speed as will permit of its being brought to a complete stop within the distance illuminated by its headlight. It is further contended that, even if the driver of the automobile was negligent, his negligence could not be imputed to Del Buono, riding in the back of the car, and that therefore, if it was negligence to operate the locomotive at a speed greater than would permit of its being stopped within the distance to which we have referred, defendant company would be liable for the resulting accident. As authority for the first proposition as to the speed at which the locomotive should have been operated under the circumstances, plaintiff cites Peart vs. The Orleans-Kenner Traction Company, No. 10,832 of the docket of this court, 11 La. App. 11; 123 So. 822, 824. As authority

for the second proposition to the effect that the negligence of the driver of an automobile cannot be imputed to the persons riding with him, we assume that plaintiff relies on Churchill vs. T. & P. R. Co., 151 La. 726, 92 So. 314; Daull vs. N. O. Ry. & L. Co., 147 La. 1012, 86 So. 477, and other similar cases. Plaintiff's entire contention, and his only specification of error in his brief, is to the effect that the lower court refused to give the following instruction to the jury:

"That it is the duty of a railroad when operating its trains in the day time when the vision is obscured by the density of the atmosphere or foggy on account of rain to have the headlight of its train burning and that the train should not be operated so rapidly that it could not be stopped by the use of ordinary means within the distance in which an automobile could be seen or discovered approaching the track by the glare of the headlight."

We believe that the doctrine of the Peart case is not applicable here, because it is apparent that, even if that doctrine does apply to the operation of a steam railroad in the open country, under ordinary conditions, nevertheless, it is manifest that, under the facts of this case, the engineer would not have been able to see the automobile, even had it stopped only ten feet from the track, because his view toward the side of the track from which the automobile was approaching was obstructed for a space of about three hundred feet by the locomotive boiler. In other words, had the automobile reached a point ten feet from the track at any time after the locomotive reached a point three hundred feet from the crossing, the automobile would not have been within the range of vision of the engineer, due to the fact that the boiler would have entirely cut off his view. Assuming, then, that due to atmospheric or other conditions, the engineer's vision was obstructed or obscured, or limited, and assuming that the doctrine of the Peart case is otherwise applicable, which the writer does not concede, it is evident that the failure of the headlight to illuminate a distance of three hundred feet or more was not the proximate cause of the accident, because, even had it been on a clear day, the engineer could not have seen the automobile approaching, as it did, from the other side. It is not contended that the automobile was standing near the track while the train was more than three hundred feet away, but simply that it arrived only an instant before the train, and after stopping, crashed into the front end of the train. Even if we assume that the engineer could see only fifty or sixty feet on account of the dense atmospheric condition, the failure to see further was not a contributing cause to the accident. Unless, then, we are prepared to hold that the defendant was negligent in having its locomotive so designed, we are forced to the conclusion that the fact that the rain obstructed the vision of the engineer had no causal connection with the accident, so far as the operatives of the train are concerned.

It appears to the writer, however, that the doctrine of the Peart case, for other reasons, has no application here. The train was operated in the open country over its private right of way and the crossing on which the accident occurred was not a main or much-used thoroughfare. In Vincent vs. M. L. & T. R. R. & S. S. Co., 48 La. Ann. 933, 20 So. 207, 209, 55 Am. St. Rep. 287, the court said:

"It has been said in other jurisdictions that trains must be run with speed on dark nights and on misty days, and that doing

so raises no inference of negligence in the absence of special facts going to call for particular precaution."

To require of trains in the open country that they shall at all times operate at such speed as will permit of their being stopped within the distance illuminated by their headlights would seriously interfere with train schedules, in which the general public is as much interested as are railroad companies. In Brown vs. R. R. Co., 42 La. Ann. 350, 7 So. 682, 683; 21 Am. St. Rep. 374, our Supreme Court cited with approval Continental Improvement Co. vs. Stead, 95 U. S. 161, 24 L. Ed. 403, in which the Supreme Court of the United States said:

"From the character and momentum of a railroad train and the requirements of public travel by means thereof, it can not be expected that it shall stop and give precedence to any approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train."

It follows, then, that an engineer may approach a crossing with the full expectation that those who wish to cross the track will have due regard for the superior right of the train.

Further points of differentiation between this and the Peart case are that, in the Peart case, the court found that "this particular crossing was unusually dangerous," and there the court said, with reference to the whistle, "the evidence creates a serious doubt as to when and how it was blown."

Another feature which distinguishes this case is that in the Peart case the view was obstructed by a fog, which appears to have been impenetrable beyond ten or fifteen feet, while here it was only a very severe rain, and it is impossible to believe that a rainstorm, no matter how severe, will prevent those in an automobile from seeing the headlight of an approaching train a sufficient distance away to permit of their stopping and allowing it to pass. The engineer knew that he could see by his headlight about sixty feet ahead of his locomotive, and he was justified in assuming that a person looking towards the headlight could see it, while it was several times that far away. It is a well-known fact that a person looking towards a light can see it much farther away than the space illuminated by its rays. This is true in a rainstorm, though it is true to a lesser degree in a fog.

We do not think it necessary to consider further the question of whether there was contributory negligence in plaintiff, in that he did not take independent precautions of his own, in view of our holding that the defendant company was guilty of no negligence.

Believing as we do, that the railroad company was entirely free from fault, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.