JANVIER, J.
(dissenting). There are certain facts which are not in dispute and which in themselves convict Mrs. McLellan of contributory negligence:
First, on the front end of the approaching locomotive there was a brilliant electric headlight.
Second, the coal chute was 200 feet from the automobile driveway and 50 feet from the railroad track, so that even if when the automobile was more than 50 feet from the track, the view of Mrs. McLellan was slightly obstructed by the chute 200 feet to her right, nevertheless, when she.reached a point 50 feet from the track, that obstruction passed entirely out of the case and no longer interfered in the slightest degree with her vision in the direction from which the locomotive was approaching.
Third, the other buildings mentioned were all farther away than was the coal chute and at no time obstructed the view to any extent at all.
Fourth, the drivers of the four or five other automobiles alongside of and to thg rear of Mrs. McLellan’s car all saw the approaching train and stopped to let it pass.
Fifth, the bell on the train was automatically ringing by steam.
In addition to these facts, it is abundantly proven by the record that there were no box cars or any obstructions to interfere with the clear view which Mrs. McLellan would have had had she looked.
Even plaintiff’s witnesses did not testify positively that there were standing on the tracks box cars which would have interfered with her vision, but contented themselves with saying that at times in the past box cars had been parked on those tracks.
There is no doubt of the- primary negligence of defendant’s tower man in raising the gates after the first train passed, and in thus inviting Mrs. McLellan and her husband to enter upon the crossing. But *588 this invitation cannot be considered as a guaranty that they might proceed safely 180 feet across thirteen tracks, without ever again taking the usual precautions of looking out for trains.
The fact that the night was dark and that there were few, if any, street lights in the vicinity from which the train was approaching, accentuated the brilliancy of the electric locomotive headlight. Del Buono vs. Ill. Central R. Co., 12 La. App. 35, 124 So. 694; Gliniecki vs. Pere Marquette Ry. Co., 238 Mich. 361, 213 N. W. 168.
With reference to the question of whether the raising of gates constitutes an invitation to cross without taking any precautions whatever, I call attention to several cases decided by the courts of this state and elsewhere.
In Ladner vs. N. O. Terminal Co., 139 La. 262, 71 So. 503, 504, the court said:
“Plaintiff appeared to think that because of the failure of the defendant company to lower the gates, and he testified that it failed to lower them in this instance, he was relieved of all responsibility to look and listen while crossing the tracks of the defendant company. In this he was mistaken. He should have looked and listened while crossing a street in which cars are being operated in a city.”
In Union Pacific Railroad Co. vs. Rosewater (C. C. A.) 157 F. 168, 171, 15 L. R. A. (N. S.) 803, 12 Ann. Cas. 851, it was said:
“Does the signal of a flagman at a railroad crossing of a city street relieve the traveler on the highway of the duty to look and listen before venturing upon the tracks? The additional, precautions to prevent accidents, such as gates and flagman, with their means of giving warning are adopted in view of the greatly increased dangers at such crossings. The noise of city traffic, the number of pedestrians and vehicles upon the street, the haste and activity of urban life, the frequency of the passing of engines and trains, and the proximity of buildings and other structures to the tracks make such precautions necessary. They are designed to meet the increase of peril resulting from local conditions and the congestion of traffic. Such additional precautions are not imposed by statute or municipal ordinance upon railroad companies, or voluntarily assumed by them for the purpose of relieving the travéler upon the streets from the taking of those simple precautions for his own safety which the long-settled rule of law requires of him. To hold otherwise would tend to defeat the very purpose for which gates and flagmen are maintained. It would result not so much in lessening danger and ensuring safety as in the mere transference of a mutual obligation to exercise care entirely to the shoulders of one of the parties.”
In Tucker vs. N. Y. C. & H. R. R. Co., 124 N. Y. 308, 26 N. E. 916, 917, 21 Am. St. Rep. 670, it was said:
“But if the inference was permissible that he looked at the moment of changing the bag, it does not meet the requirements of the case. He had still six tracks to cross, and was then eleven feet from the south rail of the first track. To look then, and not again, to go on from that point without observing the further precaution of watching for the approach of trains upon tracks almost constantly in use, was not a proper observance of that care which it was his duty to exercise.”
This court, in a case in which there were only four tracks, Gibbens vs. N. O. Terminal Co., 159 La. 347, 105 So. 367, 369, said:
“This court has never yet held directly or by reasonable inference that the failure of a railroad company to close the gates at public crossings and to keep them closed continuously in times of danger is of itself such a breach of duty and such an act of negligence as to constitute the immediate and proximate cause of an accident resulting in injury, and which would relieve the injured party from the duty of looking *589 and listening or from exercising ordinary care and prudence to see for liimself that there was no danger and that the route was sure and safe.
“To hold so would he to make -the railroad company an insurer against every accident happening at such crossings hy collision with its trains when the gate was open, and that, too, without regard to whether the gate was left open intentionally, by accident, or through some defect in the appliances.
“To establish such a rule of jurisprudence, as said by some learned authority would be ‘to make gates and flagman harmful creators of negligence instead of helpful aids to safety.’ * * *
“Our conclusion is that the failure of the plaintiff to look and listen, and to exercise such ordinary care and prudence as necessary to assure his safety before going upon the railroad crossing, amounted to such contributory negligence as to bar his recovery for injuries to his person and to his automobile. The gate being located at a station crossing, and the railroad tracks being inclosed, the mere fact that the gate was open did not absolve the plaintiff from the exercise of that due care and caution which is required from one going into such a known place of hazard and danger.”
Here there were thirteen tracks, and the distance between the raised gate and the track on which the accident occurred was nearly 200 feet. Does the raising of a gate under such circumstances relieve the traveler on the highway of the obligation of taking ordinary precautions at a point 200 feet beyond the gate and after he has traversed twelve tracks? I think not.
Cherry vs. L. & A. R. Co., 121 La. 471, 46 So. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323, cannot save the situation for Mrs. McLellan. True she was not obliged to stop at each track, but she was under the obligation of keeping constantly and continuously on the alert and of doing what an ordinarily prudent driver would have done and what the other drivers alongside her did do. She should have glanced from side to side. The merest glance to her right at any time after she reached a point 50 feet from the track would have brought to her attention the approaching train. In the Cherry case the crossing consisted of only four tracks and was only 49 feet wide. I call attention particularly to the word “only” in the following quotation from the syllabus thereof:
“Where the distance across four railroad tracks is only 49 feet, a traveler about to cross the tracks exercises all due legal care and prudence if he stops and looks and listens before venturing upon the first track. He is not required to repeat the precaution with each of the tracks in succession.”
With reference to the contention that Mrs. McLellan had to look in both directions because there might have been trains coming from the other direction also, and that she therefore could not see everything in either direction, I call attention to the following:
“It is negligence for a person to be upon the track of a railroad without keeping watch both ways for trains.” Thompson vs. Morgan, 167 La. 335, 119 So. 69.
“It is the duty of the driver of an automobile, before attempting to cross two or more parallel railroad tracks to stop, look and listen for moving trains, cars or locomotives before entering upon the first trade and to continue to look and listen for them until he is over all of the tracks.” Branch vs. Missouri Pac. R. R. Co., 7 La. App. 257.
Nor does the fact that the conductor who was on the step of one of the passenger coaches and who, though he saw the auto approaching the track, did not signal the engineer to stop, render the company liable, because the testimony shows that, when this occurred, though he was nearly 200 *590 feet from the crossing, the locomotive was almost at the crossing and the train could not have been stopped. Furthermore, as I have said, he was some distance from the locomotive and did not have immediate control thereof, and the intervening seconds between his view of the automobile and the collision were not sufficient for him to communicate with the engineer and for the engineer to stop. Then, too, both the automobile and the train were approaching the crossing at a very moderate speed, and he was justified in assuming that the automobile would stop, as so many do, just before it reached the track.
“Trainmen have a right to believe that a person approaching the railroad track will exercise his senses of sight and hearing so as to perceive the approaching train in time to avoid all accidents.” Nolan vs. I. C. R. R. Co., 145 La. 483, 82 So. 590.
On this same point I call attention to the unanimous jurisprudence to the effect that the doctrine of the last clear chance has no application, and will not serve to render a defendant liable, where the negligence of the injured party continues to the moment of the accident. Jarrow vs. City of New Orleans, 168 La. 992, 123 So. 651; Harrison vs. La. Western R. Co., 132 La. 761, 61 So. 782; Castile vs. O’Keefe, 138 La. 479, 70 So. 481. That all the other autoists saw the train and stopped, and that those on the train saw the automobiles, is conclusive proof of the fact that Mrs. Mc-Lellan could have seen the train had she looked.
I cannot but feel that to affirm a judgment for Mrs. McLellan would do violence to the jurisprudence of tihis state and of the United States, which jurisprudence is, in my opinion, well expressed in the following:
“Statutes and municipal ordinances in every jurisdiction prescribe specifically the duty of railway corporations in respect to railway crossings; but no failure on the part of the railroad company to do its duty will excuse any.one from using the senses of sight and hearing upon approaching a railway crossing, and, whenever the due 'use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad’s failure to perform its duty.” Brown vs. T. & P. Ry. Co., 42 La. Ann. 350, 7 So. 682, 684, 21 Am. St. Rep. 374.
“When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him.” B. & O. R. R. Co. vs. Goodman, 275 U. S. 66, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645.
As to Mr. McLellan, the legal situation is different. The negligence of his wife as the driver of the car is not chargeable to him. Churchill vs. T. & P. Ry. Co., 151 La. 726, 92 So. 314; Vitale vs. Checker Cab Co., 7 La. App. 653; Daull vs. N. O. Ry. & Light Co., 147 La. 1012, 86 So. 477; Southern Surety Co. vs. M. L. & T. R. R. & S. S. Co., 6 La. App. 575.
Of course, as was recognized in the Churchill case, there may be and there often are circumstances under which a guest in an automobile is guilty of negligence independent of that of the driver: for instance, where the driver is plainly incompetent, or is manifestly intoxicated, or guilty of such continuous recklessness as to demand remonstrance or protest from any ordinarily prudent person. But these circumstances do not seem to have been present here.
I therefore concur in the decree amending and affirming the judgment in favor of Mr. McLellan, but respectfully dissent from the decree amending and affirming the judgment in favor of Mrs. McLellan.