The opinion of the court was delivered by
McEnery, J.
Pierre Lanaux, commission merchant and factor, died in the city of New Orleans, September 6, 1892. He was the agent for Mrs. E. Tassin, Octave Hymel, deceased, and J. R. and Seraphin Hymel. These parties entrusted their funds to Lanaux for investment without specifying and directing the mode of'investment. These funds were never, except in case of Mrs. Tassin, loaned to Lanaux, and he was never authorized to use them for his own purposes or in his business. The mandate, as shown by the witnesses and the correspondence between the parties, was to invest their funds. They were deposited by them with Lanaux for this purpose and none other. On the accounts current furnished these several parties, it was noted that the funds had been invested without saying in what particular manner.
A short time before his death, Lanaux, for the amounts which he had for investment for these parties, made up separate packages in separate envelopes in which were placed his individual notes for the amount due each, with bonds and certificates of stock, with the usual blank power of attorney to transfer, attached to them.
On each envelope or package was endorsed the name of the party *1042 to whom it belonged. They were placed in a bank box, and this box with the key was placed in the actual, corporeal possession of DeJahan, his clerk.
This box was, according to Lanaux’ instructions, placed in the branch depository of the State National Bank for security and safe keeping, through the intervention of G. A. Lanaux, who received the box from DeJahan. DeJahan was instructed and directed by Lanaux, to deliver on demand these packages to the persons to whom they were addressed.
He had exclusive control of the box containing these pledges and says he would have delivered them to the parties on demand. It is evident, from the testimony of DeJahan and G. A Lanaux, that DeJahan’s possession of the box was full and complete, and adverse to that of Lanaux.
Mrs. Tassin, who had instructed Lanaux in the same manner as the Hymels, as to the investment of her money, subsequently met Lanaux, to whom she loaned her money on the faith of the securities set apart for her, with the understanding that DeJahan was to be the depositary of the pledge. DeJahan after receiving these packages, informed Mrs. Tassin of his possession of the same for her benefit, and she accepted DeJahan as the depositary then, as she had previously signified her assent to do so, when she had the conversation with Lanaux, which resulted in the loaning of the money. This statement of the facts in relation to Mrs. Tassin brings her case directly under the textual provisions of Art. 3162 of the Civil Code and the interpretation placed upon the same by this Court. 42 An. 694; 38 An. 863; 33 An. 973; 32 An. 1250.
The fact that DeJahan was the clerk of Lanaux could not affect his capacity to act as a third party, chosen by the parties, to be the detainer of the thing pledged. There was no inconsistency in the two relations. Having accepted the trust, so far as it was concerned, he was a stranger to Lanaux, and in no way bound by his private relation to him to violate his obligation as a fiduciary and to surrender the pledge to him. And he so regarded it, as he says he would have delivered the packages on demand to the parties for whom they were intended.
Seraphin Hymel, J. R. Hymel and Octave Hymel were informed of the investment of their funds, either by Lanaux or DeJahan, although the testimony does not show that they were informed par *1043 ticularly as to the mode of investment. It is a fair inference, however, that they were so informed by Lanaux and DeJahan when they spoke to those parties, whom they had visited for the purpose of informing them as to the fulfilment of the trust imposed by them upon Lanaux. This is corroborated by the blank power of attorney which Seraphin Hymel refused to sign, the object of which was to remove and to deposit bonds, bills, stocks, notes, etc.
Taking all the evidence together, the impression made upon the mind is that the Hymels had knowledge of the pledging of these bonds, stocks, etc., for them, and that they accepted DeJahan as the custodian.
Seraphin Hymel’s reason for refusing to sign the power of attorney was that he thought his funds safely invested.
The power of attorney was admitted in evidence over the objection of opponents, but it was admissible to show in part that Seraphin Hymel knew that his funds had been investod in the manner shown by the inventory and the account and the disposition of his funds, and that he accepted DeJahan as the third party agreed on between'the parties to detain the pledge.
We see no good reason why the debtor can not place the thing pledged in the hands of a third party and inform the creditor of the fact, when, if he accepts the third party, the pledge becomes perfected. Such seems to be the doctrine indicated in Peters vs. Pacific Guano Co., 42 An. 694.
The succession of Lanaux could have no greater rights than the decedent. If he had lived would not the pledgees have had the right to claim the things pledged to them in the hands of DeJahan? If a demand had been made upon DeJahan for the pledges he could not have set up title in Lanaux, and Lanaux certainly was estopped from claiming the pledges.
In fact he had completely divested himself of possession of the notes, bonds and certificates of stock after DeJahan had accepted the pledges from him and had been accepted as the detainer of the pledges by the pledgees.
Any attempt of Lanaux to dispose of the things pledged in the hands of DeJahan could have been successfully resisted by the pledgees. Another view of the case is also fatal to the demand of opponents.
Conceding that there was no valid pledge of the property, the relations between Lanaux and the Hymels were not those of debtor *1044 and creditor. They never authorized Lanaux to use for his own purpose or in his business these funds. Their instructions to him, who was their servant and agent, were to invest their funds. They were informed that they had been invested, and it was so noted in the account current furnished the Hymels. Lanaux invested these funds in property, of which he was the owner, and placed the same in the hands of his clerk to be delivered on demand. The Hymels, on his death, found in his succession this property detained by Lanaux for them. This property was presumably purchased with their funds and separated from Lanaux’ property, and became their property. Beaty vs. McLeod, 11 An. 76.
It is the law that the Hymels, in order to secure the identical fund in the insolvent succession, must separate the fund from the mass of the succession and distinguish it. But it is also the law when trust funds have been specifically invested in property which can be identified the property must respond to the trust fund and stand in its stead. The Hymels therefore have the right to claim the specific property purchased with their funds by their servant and agent. Id.
It is contended by opponents that the notes were null and void because signed and endorsed by DeJahan, and that he had no written authority to sign and endorse them. The mandate to sign and endorse a promissory note must be express and special, but it need not be in writing. 21 An. 476.
DeJahan’s authority to sign and endorse the notes was express and special, although not in writing.
To perfect the pledge the delivery of the bonds, notes, etc., was sufficient. 35 An. 1171; C. C. 2158.
On October 8, 1891, S. Hymel deposited with Lanaux twenty-three thousand dollars. This deposit was for the purpose of meeting current expenses of his plantation. This sum is placed on the account as an ordinary debt. It is claimed by Hymel that this was a trust fund, and that the executor must turn it over to Hymel’s representatives before making a distribution of Lanaux’ assets among his creditors.
The fund has not been identified, nor has it been traced in its conversion into other property.
The depositor has no general privilege on the property of the agent. 25 An. 478; 31 An. 314.
*1045 It must therefore be rated as an ordinary debt against the succession fund.
The opposition to the claim of the Planters’ Fertilizing Company is not well founded. The proof is sufficient to sustain the claim. The District Judge was of this opinion and we see no reason to disturb his ruling.
Walton & Co. and Moran & Wood’s claim for a privilege for coal furnished the plantation was properly allowed, restricted as it was to coal furnished for making the crop of sugar on the several plantations.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to reverse that part of the decree sustaining the oppositions to the claims of Seraphin Hymel, Octave Hymel, Joseph R. Hymel, Mrs. F. E. Tassin, to be paid by preference and privilege out of certain notes and bonds, shares of stock, etc., pledged to them and mentioned in the inventory and on the account of the executor, and it is now ordered that the opposition to the same be dismissed and said claims be recognized as placed in the account. In all other respects the judgment is affirmed, the succession to pay all costs.