## In re BACON.

(Circuit Court of Appeals, Second Circuit. December 9, 1913.)

### No. 11.

1. PLEDGES (§ 11*)—REQUISITES—DELIVERY OF PLEDGED PROPERTY.

Under both the civil and the common law it is necessary to the validity of a pledge that possession of the pledge be delivered to the pledgee or to some one for him; such delivery being of the very essence of the contract.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

2. BANKRUPTCY (§ 288*)—RECOVERY OF ASSETS—ADVERSE CLAIM—JURISDICTION.

Where, in a proceeding by a bankrupt's trustee to recover corporate stocks alleged to belong to the bankrupt, but in the hands of a bank, another bank claimed a lien on the stock under a pledge contract between itself and the bankrupt, and the trustee's petition was framed on the theory that the latter had valid claims secured by the stocks, the interest of the bank was adverse to that of the trustee and could not be determined by summary proceedings in the bankruptcy court over its protest.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

3. BANKRUPTCY (§ 288*)—RECOVERY OF ASSETS—ADVERSE CLAIM—JURISDICTION—CONSENT.

Summary proceedings having been instituted by a bankrupt's trustee to recover corporate stock on which a bank claimed a lien as pledgee, the bank objected to the court's jurisdiction and filed a statement of its claims. When ordered to do so, it introduced some evidence in support of such claims, but throughout the whole proceeding and at every opportunity insisted that the court had no jurisdiction. *Held*, that the filing of such statement did not operate as a consent to a determination of the bank's rights in summary proceedings in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

Petition to Revise Order of the District Court of the United States for the Western District of New York.

In the matter of the bankruptcy of Francis Bacon. Petition by George E. Zartman, as bankrupt's trustee, for review of order (196 Fed. 986) reversing a referee's order directing the surrender of certain stocks held by a bank to the trustee on his payment of a lien amounting to $498.82. Affirmed.

See, also, 205 Fed. 545.

Francis Bacon was adjudged a bankrupt on May 4, 1904. Prior to that adjudication, and on February 20, 1899, he had pledged to the Exchange National Bank of Seneca Falls, N. Y., as collateral security for the payment of certain obligations of his held by the bank, 461 shares of the stock of the Waterloo Wagon Company and 253 shares of the stock of the First National Bank of Waterloo. On February 15, 1902, while these stocks were still held by the Exchange National Bank, he transferred the same stocks to the First National Bank of Waterloo as collateral security for the payment of certain obligations held by that bank.

On August 22, 1910, the trustee in bankruptcy petitioned the referee for an order requiring the pledgees to show cause why they should not prove their liens, and why the trustee should not pay to them the respective amounts due,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and redeem such stocks and securities. The Seneca Falls Bank appeared, and waived its lien on the stocks. The First National Bank challenged the jurisdiction of the court, claimed title to the stocks, and asserted its right to have the controversy determined in a plenary action. The objection made by the First National Bank to the jurisdiction was overruled. Under the direction of the referee to proceed, the First National Bank offered proof in support of its claims against the bankrupt, which claims aggregated $17,836.20. The referee only recognized a lien to the amount of $498.82 and on the 28th day of July, 1911, made an order that upon the payment of $498.82, with interest on $451.22 from the 28th day of July, 1911, to the date of payment by the trustee in bankruptcy, the First National Bank should surrender the stocks and deliver to the trustee a discharge of all its claims against the stocks and pay over all dividends which had accumulated upon the stocks since the date of the adjudication of bankruptcy. The referee also found as a matter of law that the title was not in the First National Bank but was in the trustee. The bank took the matter for review to the District Court for the Western District of New York. That court reversed the decision of the referee and dismissed the petition of the trustee in bankruptcy for want of jurisdiction.

George E. Zartman, of Waterloo, N. Y., for petitioner.

Bacon & Huff, of Waterloo, N. Y. (W. Smith O'Brien, of Geneva, N. Y., of counsel), for defendant.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). A trustee in bankruptcy comes into this court asking to have reviewed the action of the District Court which reversed an order of the referee on the ground that the latter acted without jurisdiction in entertaining summary proceedings against an adverse claimant.

The contract made by Francis Bacon and the First National Bank refers to the fact that the said Bacon has deposited with the Exchange Bank certain stocks which are specifically set forth, and then continues:

"The said Francis Bacon hereby agrees with the First National Bank of Waterloo that the said certificates of stock above named are transferred to and may be held by the said First National Bank of Waterloo as a continuing collateral security for tl payment to it of any indebtedness or liability of any kind, absolute or contingent now existing or that may hereafter exist, arise, accrue or be contracted on the part of the Waterloo Wagon Co., Limited, or himself, to said bank and said shares of stock upon their surrender by the Exchange National Bank shall be deposited with the said First National Bank of Waterloo."

There is no evidence that the Exchange Bank ever agreed to surrender the stocks to the National Bank or to hold the stocks in trust for it. The National Bank has at no time had the certificates of stock in its possession. The agreement seems to be nothing more than an agreement that, when the Exchange Bank surrendered the certificates to Bacon, they would be deposited by him with the National Bank as security for debts due to it from Bacon. In Re Sheridan (D. C.) 98 Fed. 406, where an agreement to pledge was made more than four months prior to the filing of the petition, but there had been no consummation of the agreement by the making of the pledge until a few days before the petition was filed, it was held that the pledgee's title did not attach until the goods were actually in his possession, and therefore the transfer was preferential and voidable.

[1] Under both the civil and the common law it is necessary to the validity of a pledge that the possession of the pledged property be delivered to the pledgees or to some one for him, and delivery is the very essence of the contract. While delivery may be made to a third person to hold for the pledgee, such third person must know of the agreement and accept the obligation it imposes. Lanaux's Succession, 46 La. Ann. 1036, 15 South. 708, 25 L. R. A. 577. It appears that this agreement, as originally drawn, did not conform to the actual agreement of the parties, and a suit was commenced in the Supreme Court of New York to reform it, and a decree was entered, reforming it. The case was affirmed in the Appellate Division, and in the course of its opinion that court said the agreement amounted to a valid pledge of the stocks, and that, while delivery of possession of property was ordinarily essential to the making of a pledge, yet in the case of stock no delivery of possession was necessary, and that a pledge of property not capable of manual delivery might be created by written transfer. First National Bank of Waterloo v. Bacon, 113 App. Div. 612, 614, 98 N. Y. Supp. 717. What the court said as to the validity of the pledge and as to the duty of the National Exchange Bank to deliver the stocks to the First National Bank would seem to have been purely obiter dicta. The action, as the court itself remarked, was "merely to reform the contract, not to establish any indebtedness thereunder. That will be determined in another action." Agreement to give a pledge is as readily reformable as an agreement creating the pledge. The case was taken to the Court of Appeals, which affirmed without an opinion (189 N. Y. 533, 82 N. E. 1126). It was carried to the Supreme Court of the United States (Zartman v. First National Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418), which also affirmed it. The only question which the Supreme Court of the United States considered was whether the jurisdiction of equity to reform a written contract made prior to a petition in bankruptcy was suspended by the bankruptcy law, and it was answered in the negative. The courts have held that an agreement, even though in writing and under seal, that certain stocks and bonds of the debtor shall be collateral security for a debt due the creditor does not amount to a pledge of the stocks in the absence of a delivery. Seymour v. Hendee (C. C.) 54 Fed. 563; Robertson v. Robertson, 186 Mass. 308, 71 N. E. 571; Atkinson v. Foster, 134 Ill. 472, 25 N. E. 528; Lanaux's Succession, 46 La. Ann. 1036, 15 South. 708, 25 L. R. A. 577; Vanstone v. Goodwin, 42 Mo. App. 39; 31 Cyc. 807. But we are not required to pass on that question in this case.

[2] It is enough to know that the First National Bank claims that under the law of New York it has a lien on these stocks as a security for debts due from Bacon to it. The trustee's petition was framed upon the theory that the bank had valid claims secured by these stocks. The bank has been throughout asserting an adverse claim and that its right in the stocks has been established by the New York courts.

It seems to have been at one time a favorite opinion of referees that the moment a man was declared a bankrupt all questions relating to his property and credits came within the exclusive province of the bank-

ruptcy courts, and that they could bring any person who contested with the assignee disputed rights of property or of contracts into the bankruptcy court under an order to show cause and there force a settlement of his claim in a summary way. But in Eyster v. Gaff, 91 U. S. 521, 525 (23 L. Ed. 403), the Supreme Court, in alluding to this prevalent practice of referees, said, "This court has steadily set its face against this view."

The right of a trustee in bankruptcy to bring suit depends upon the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

Section 23a of the act confers upon United States Circuit Courts jurisdiction of all controversies at law and in equity between trustees as such and adverse claimants concerning property claimed by the trustees in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants. In instituting the present proceedings, the trustee was not acting under this provision.

Section 23b provides that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted unless by consent of the proposed defendant, except suits for the recovery of property under section 60, subd. "b", and section 67, subd. "e." As the proceeding which the trustee in this case instituted against this defendant was without his consent and over his emphatic objection, the proceeding, in order to be maintained, should fall either within section 60, subd. "b," or section 67, subd. "e."

Section 60, subd. "b," however, relates to preferences given by a bankrupt and grants concurrent jurisdiction to the state and bankruptcy courts of suits to set aside such preferences and give the property to the trustee. And section 67, subd. "e," relates to conveyances, transfers, or assignments of property made or given by a bankrupt within four months prior to the filing of the petition in bankruptcy and with intent to hinder, delay, or defraud creditors, and it gives to the bankruptcy and state courts concurrent jurisdiction of suits brought by the trustee to recover property so transferred. Neither of these provisions has any relation whatever to the present proceeding.

Section 70, subd. "e," authorizes trustees to avoid any transfer which any creditor of the bankrupt might have avoided, and gives to the bankruptcy and state courts concurrent jurisdiction. The trustee in the present proceeding is not seeking to avoid any transfer, nor is he alleging any fraud in the transactions between the bankrupt and the defendant bank. The District Court fell into error in supposing that the proceeding before the referee was under this provision. It has no application whatever to such a proceeding as the one under consideration.

Neither do we think that the trustee is proceeding under general order 28 (89 Fed. xi, 32 C. C. A. xxviii). That order regulates the manner in which a trustee, who admits an indebtedness, may get au-

thority from the bankruptcy court to settle with a secured creditor. As the trustee is not admitting the indebtedness the bank claims and asking authority to settle it, the order is without any application to this proceeding.

We find nothing in the act, therefore, which justifies the course which has been pursued. What the trustee sought to do was to compel the bank to submit to the bankruptcy court for adjudication, in a summary proceeding, the adverse claims of the bank. This the trustee could not do without the bank's consent.

It was repeatedly held under the Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) that the right of an assignee in bankruptcy to assert a title to property which the bankrupt had transferred to a third person prior to his bankruptcy, and which such third person claimed adversely to the assignee, could only be asserted in a plenary suit and not by summary proceedings, notwithstanding the declaration in the act that the jurisdiction in bankruptcy should extend "to the collection of all the assets of the bankrupt," and to "all acts, matters and things to be done under and in virtue of the bankruptcy" until the close of the proceedings in bankruptcy. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481; 5 Cyc. 250, note 68. And in 1900 the Supreme Court of the United States decided in Bardes v. Hawarden First National Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, that under the act of 1898 no jurisdiction existed in the United States bankruptcy courts over adverse claimants, and such suits could only be brought in the state courts or, in case of diversity of citizenship, in the United States Circuit Courts. Since the bankruptcy courts exercised no jurisdiction at all over adverse claimants, they could exercise none by summary proceedings. See Remington on Bankruptcy, vol. 1, § 1653. Then in 1903 Congress amended the act and conferred jurisdiction on the bankruptcy courts over suits instituted by trustees to recover property or the proceeds of property transferred in fraud of creditors, including payments in money or property to preferred creditors. The additional jurisdiction then conferred was not to be exercised by summary process but by regular plenary action. So that the summary jurisdiction was not enlarged by that amendment, and the law as to summary proceedings was left precisely as it had existed prior to the amendment. It is not important now to inquire whether the Amendatory Act of 1910 (Act June 25, 1910, c. 412, 36 Stat. 838 [U. S. Comp. St. Supp. 1911, p. 1493]) had any effect upon the summary jurisdiction of the bankruptcy court, as that act expressly provided that it "should not apply to bankruptcy cases pending when" it took effect, and the case of Francis Bacon was pending in the bankruptcy court at that time and so was not affected by it. The law is that if the claims are adverse the claimants are entitled to be heard in a plenary suit, but if the claims are not adverse they may be summarily adjudicated in the bankruptcy courts. See 5 Cyc. 250. The District Courts can only entertain jurisdiction to recover and collect debts brought by a trustee against a third person when it appears that the defendant has consented thereto.

The intention of Congress was that the bankruptcy court should

control the trustee, settle his accounts, and order the distribution of the moneys in his hands, and in respect to such matters the jurisdiction of the federal courts was made exclusive. But it was not intended that the bankruptcy court should assume the burden of all litigations which might be necessary in the collection of the assets of a bankrupt. The policy of Congress evidently was to give to the bankruptcy courts the narrowest and to the state courts the amplest control over proceedings for the recovery of property claimed to belong to the estate of the bankrupt. The courts of bankruptcy have full power by summary proceedings to determine all disputes relating to the title of property which is in the possession of the court. Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183. It is also true that such courts have jurisdiction to recover property belonging to the bankrupt's estate and which is in the possession of a naked bailee or agent who has no claim of title as against the trustee. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. But the pending proceeding was not instituted upon any such theory. The petition recognizes the existence of a valid lien and seeks to redeem therefrom.

The courts of bankruptcy undoubtedly have a right to ascertain whether, in a particular instance, the claim asserted is an adverse claim existing at the time the petition is filed. If it be ascertained by proper inquiry that a real adverse claim exists, no matter how ill supported it may appear to be, a court of bankruptcy cannot summarily decide as to the validity of the claim. Collier on Bankruptcy (5th Ed.) p. 268; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; In re Teschmacher & Mrazay (D. C.) 127 Fed. 728; In re Davis (D. C.) 119 Fed. 950; In re Kane (D. C.) 131 Fed. 386.

That a trustee takes the property of a bankrupt subject to all subsisting and valid liens, incumbrances, or equities, whether created by operation of law or by the act of the bankrupt, is not subject to question. Yeatman v. New Orleans Savings Institution, 95 U. S. 764, 24 L. Ed. 589; Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136; Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993. The act of 1867 specifically provided for the redemption of property pledged. The act of 1898 does not in specific words authorize the redemption of such property, but such authority is implied under authority to "cause the estates of bankrupts to be collected, reduced to money and distributed." The bankruptcy court has jurisdiction to redeem the property of the bankrupt from liens if there be no controversy over the amount due and no adverse interest. Remington on Bankruptcy, § 1870. But it cannot acquire jurisdiction over adverse claimants in possession, nor can it litigate controversies with them in such proceedings. A petition to redeem is in the nature of an application to the bankruptcy court for its permission to pay off an uncontroverted lien. And if it appears that no adverse interest is asserted, the bankruptcy court under a petition to redeem has a right to summarily order the surrender of the property. Remington on Bankruptcy, § 1871. But the proceedings before the referee in this case disclosed the fact that a serious dispute exists between the trustee and the bank as to the extent of its claims; the referee rejecting the

greater part of them. Under such circumstances the validity of the claims cannot be disposed of in a summary proceeding in the bankruptcy court without the consent of the adverse claimant.

[3] The trustee does not deny that the First National Bank is an adverse claimant, but he alleges that the bank waived its objection to the jurisdiction by denying material allegations of the petition and by making affirmative allegations after its objection to the jurisdiction had been overruled. The bank denies that it ever pleaded to the merits. What it did was to file a statement of its claims and, when ordered to do so, introduced some evidence in support of its claim, but it was throughout the whole proceeding and at every opportunity insisting that there was no jurisdiction. We are satisfied that the bank never waived its objection to the jurisdiction. In Foster's Federal Practice (5th Ed.) vol. 2, § 609, that learned writer states the law as follows:

"The bankruptcy act by implication gives the courts of bankruptcy jurisdiction over suits by the trustees 'by consent of the proposed defendant.' Consent is given to the jurisdiction of a court of bankruptcy in summary proceedings against an adverse claimant, by his appearance and answer to the merits without raising the jurisdictional objection, but not when he joins in the same answer an objection to the jurisdiction with a defense upon the merits."

This statement of the law is fully justified by the decision of the Supreme Court of the United States in Wood v. Wilbert, 226 U. S. 384, 33 Sup. Ct. 125, 57 L. Ed. 264, overruling Sheppard v. Lincoln (D. C.) 184 Fed. 182. We think it effectively disposes of the pretense that the question of jurisdiction has been waived.

The order of the District Court reversing the decision of the referee and dismissing the petition of the trustee for want of jurisdiction is affirmed, with costs.