## LOEWENBERG et al. v. FIDELITY UNION CASUALTY CO. et al.*
### No. 4519.

Court of Appeal of Louisiana. Second Circuit.
March 31, 1933.

*Rehearing denied April 28, 1933.

**DREW, Judge.**

The pleadings in this case consisting of petitions, answers, exceptions, pleas, and motions, amount to nearly 100 pages of the transcript, and, for the purpose of this opinion. are correctly stated by plaintiff in brief, as follows:

This is an action in damages resulting from an injury to plaintiffs' minor son, Morris Loewenberg. In the original petition Dr. Sanders Fowler was the sole defendant. The allegations are that on the morning of January 29, 1931, at about the hour of 10 a. m. o'clock, Morris Loewenberg, minor son of Ignatz and Theresa Loewenberg, was struck by an automobile, owned by defendant and driven by his minor son; that on this occasion the said Morris Loewenberg was crossing Kings highway in the city of Shreveport, La., proceeding in the direction of Byrd High School at the intersection of Dillingham street; that Sanders Fowler, Jr., was driving east on Kings highway, and had a clear and unobstructed view along said street; that he struck plaintiffs' son at the foot of a steep hill on Kings highway, near or at a place where the pupils of said school habitually crossed the street to gain access to said school, to the knowledge of Sanders Fowler, Jr., also a student of the said Byrd High School.

Plaintiffs charged defendant's minor son with negligence in failing to see Morris Loewenberg crossing the street because he was not maintaining a proper lookout; or, if he did see him, that he struck him because he was driving at a reckless and dangerous rate of speed, in excess of that permitted by statute and by section 36 of Ordinance 207 of 1923 of the city of Shreveport, and because defendant's car was equipped with defective brakes.

Sanders Fowler, Jr., at the time of the accident was only fourteen years of age, because of which youth and lack of experience he was incapable of properly handling said automobile, violating Ordinance No. 72 of the city of Shreveport for the year 1922, regarding the age limit of automobile operators.

Injuries were alleged as a result of a concussion to his brain; shock to the nervous system, with attendant pain and suffering; also medical attention, supplies, and hospital bills resulting from the accident.

The answer of Dr. Sanders Fowler denied the indebtedness, but admitted the accident as having occurred on January 29, 1931, at the time alleged in plaintiffs' petition, and admitted that the car was driven by his minor son. It was further admitted that the defendant's car was proceeding in the direction as alleged, and that the accident occurred at or near the bottom of a steep hill near Byrd High School, and that the said Sanders Fowler, Jr., was a student of said school; that the said Sanders Fowler, Jr., did not see Morris Loe-

Harry V. Booth and Wm. H. Cook, both of Shreveport, for appellants.

Lee, Gilmer & Lee and Wilkinson, Lewis & Wilkinson, all of Shreveport, and J. C. Hollingsworth, of New Orleans, for appellee.

wenberg crossing Kings highway until a few seconds before the car driven by him struck the said Morris Loewenberg; that, after he first observed Loewenberg, it was impossible for him (Fowler) to stop his car in order to avoid striking him. The remaining material allegations of negligence of plaintiffs' petition were denied.

Further answering, Fowler averred that Loewenberg was on the north side of Kings highway near the foot of the hill (Kings highway), with other students of the high school, when Fowler, proceeding east on Kings highway, arrived at a place nearly opposite the said Morris Loewenberg, when he (Loewenberg) suddenly and without warning started across the street, "and on reaching a point in said street directly in front of the car being driven by the said Sanders Fowler, Jr., and in close proximity to said car, the said Morris Loewenberg suddenly stopped." It was then averred that the close proximity of Loewenberg to the car driven by Fowler made it impossible for Fowler to avoid striking Loewenberg; the proximate cause of the accident being Loewenberg's own contributory negligence in attempting to cross said street directly in front of and in close proximity to the automobile driven by Fowler. It was admitted that Sanders Fowler, Jr., at the time of the accident was fourteen and one-half years of age. The answer then averred that Ordinance 72 of 1922 of the city of Shreveport was repealed by Act No. 296 of 1928, as amended by Act No. 2 of the Extra Session of the Legislature for the year 1929, wherein fourteen years and above is fixed as the legal age for driving automobiles throughout the state of Louisiana, including the city of Shreveport.

By first-supplemental and amended petition plaintiffs averred that Sanders Fowler, Jr., was living and residing with his father on the date of the accident referred to in their original petition, and that the minor son of the defendant was also guilty of negligence on the occasion referred to in their original petition, in that Sanders Fowler, Jr., disregarded the right of way of Morris Loewenberg, in that he had started across said intersection (Kings highway and Dillingham) ahead of, and at a sufficient distance from, the on-coming Fowler car for the accident to have been prevented, had the operator of the car had the same under proper control, and had he been keeping a proper lookout. It was then averred that plaintiffs' son had developed what is known as chorea, commonly known as St. Vitus' Dance, which they aver was caused by the concussion and shock resulting from the accident; that he was also suffering from a lesion and possibly a small hemorrhage in the midbrain near the sleep center, both of which conditions it was averred were serious and permanent in their nature.

It was then alleged that the automobile which struck Morris Loewenberg was insured by Dr. Sanders Fowler with the Fidelity Union Casualty Company of Dallas, Tex., wherein it was provided that the latter would protect him against any cause of action arising from the negligence of himself or member of his family in the operation of said automobile; that on or about January 1, 1931, the Commercial Casualty Company, a foreign corporation, doing a general liability business within the state of Louisiana, took over the assets and business of the Fidelity Union Casualty Company, including the policy held by the said Dr. Sanders Fowler, and in so doing undertook to assume any and all liability by virtue of said policies issued by the former company.

Plaintiffs increased their demand and prayer on behalf of their minor son in their first supplemental and amended petition to $13,510, and to the sum of $1,490 on behalf of petitioners individually.

Exceptions of prematurity, no cause or right of action, and a plea in bar were filed by the insurers, which were overruled. Both insurance companies then filed their answer to both plaintiffs' original and first supplemental and amended petitions, which in effect is a general denial of the material allegations thereof; coupled with countless objections, pleas of prematurity, prescription, and in a general way matters set up in their exceptions prior to issue being joined, and theretofore disposed of by the court adversely to their contention.

The answer does admit that the Fidelity Union Casualty Company, of Dallas, Tex., did issue and deliver an automobile public liability policy, No. CAO—26011, covering the period from noon August 17, 1930, to noon August 17, 1931, on one Franklin sedan automobile, to Dr. Sanders Fowler, subject to the following condition: "(a) Driven or operated by any person under the age limit fixed by law, or under the age of sixteen years in any event"; that the Fidelity Union Casualty Company was qualified to do business in Louisiana, and at the time of the issuance of the policy was operating in Louisiana as a casualty insurance company; that on January 1, 1931, by separate and private contract of reinsurance, the Commercial Casualty Company did assume the policy contract in question.

The answer then avers that Sanders Fowler, Jr., was under the age of sixteen years at the time of the accident referred to in plaintiffs' petition; that he was driving the automobile of defendant in violation of Ordinance 72 of the city of Shreveport for the year 1922.

The answer of Dr. Sanders Fowler to the first supplemental and amended petition denied the additional allegations of negligence; averred contributory negligence as a part of his answer; and then set up the full condi-

tions of the policy held by the defendant Fowler with the insurance companies, which was annexed to defendant's (Fowler) answer.

By second supplemental and amended petition plaintiffs alleged that the insurance contract between Dr. Sanders Fowler and his codefendant, Fidelity Union Casualty Company, was in full force and effect at the time of the accident, and that said policy provided that the insurer agreed, undertook, and obligated itself to hold the said Dr. Sanders Fowler harmless from any and all liability or damages, particularly any liability and damage caused by injuries to third persons in the negligent operation of said automobile, and undertook and agreed to protect third persons, such as plaintiffs and their son, against any and all damage sustained by them through the negligent operation of said automobile, in either of which event the Fidelity Union Casualty Company and Commercial Casualty Insurance Company were liable unto petitioners, directly and in solido, by reason of Act No. 253 of 1918, as amended by Act No. 55 of 1930.

The answer of the insurance companies to the second supplemental and amended petition was a general denial, incorporating the same defenses and identical matters set forth in their answer to the first supplemental and amended petition.

The answer of the defendant Dr. Sanders Fowler to the second supplemental and amended petition admitted the allegations contained therein.

The Fidelity Union Casualty Company and Commercial Casualty Insurance Company filed an amended and supplemental answer on the day of trial, reiterating and reaverring the contents of their former answer, and setting forth substantially the same matters in defense that were set forth in the answer of Fowler.

Immediately following the close of the case all defendants filed a plea of prescription to plaintiffs' supplemental and amended petitions, based on the proposition that the damage resulting from the condition known as traumatic chorea, or for the injury to the midbrain of plaintiffs' minor son, or for the alleged change in his personality, were prescribable, since the supplemental petition was not filed until February 12, 1932; the accident occurring on January 29, 1931, by reason of article 3526 of the Civil Code.

The lower court rejected the demands of plaintiff and awarded judgment in favor of Dr. Sanders Fowler, one defendant, against the other defendants, Fidelity Union Casualty Company and Commercial Casualty Insurance Company in solido, the insurers of Dr. Fowler, in the sum of $750, as attorney's fees incurred by Dr. Fowler in defending the suit after the insurance companies disclaimed any liability and refused to defend.

From this judgment the plaintiff has appealed, and the two insurance companies have appealed from that part of the judgment only wherein judgment was granted in favor of Dr. Fowler against them for attorney's fees. There is no answer to the appeals by any of the defendants, neither have they argued or briefed any of the exceptions or pleas filed in the lower court, all of which were overruled. We are therefore not concerned with a determination of any of the pleas or exceptions in the case.

The facts in the case are clearly established. The Byrd High School, which is the first high school in the city of Shreveport, is located in the center of a block bound on the north by Kings highway, on the south by Gladstone boulevard, on the east by Creswell street, and on the west by Line avenue. Directly north of Byrd High School and about the center of the Kings highway block, between the intersection of Creswell with Kings highway, and Line avenue with Kings highway, is located Dillingham street, running north and south, the south end running into Kings highway, but not crossing it. The south end of said street ends at Kings highway.

The accident occurred at a point on Kings highway about six feet from the south curb just opposite a point where the southeast corner of Dillingham joins Kings highway, that is, at a point on Kings highway where a pedestrian would be, in coming down the east of Dillingham and continuing across Kings highway to enter the high school grounds. This particular crossing was used by a great many of the high school students each day, to the knowledge of defendant's son, Sanders Fowler, Jr. The time of the accident was between 10:30 and 11 o'clock in the morning. Sanders Fowler, Jr., and the injured son of plaintiff, and all of the witnesses to the accident, except the driver of the ice wagon, were students at Byrd High School, and had been dismissed from school at the same time. Morris Loewenberg, the victim of the accident, and two of his school friends, Edwin Terry and Herbert Hall, together with Merrill Brown and Lloyd Birdwell, proceeded towards Morris Loewenberg's home, after leaving the school, which required a northward route on Dillingham street.

Sanders Fowler, Jr., had driven to school that morning and, after being dismissed, he got in his car, drove up to Line avenue, where he turned north on Line avenue, until reaching Kings highway, where he turned east towards Creswell, which necessarily carried him past the point where Dillingham runs into Kings highway. The distance from the intersection of Line avenue and Kings highway to Dillingham street is 640 feet, and is rather a steep incline, the high point being at the intersection of Kings highway and

Line, and, when it reaches Dillingham, the grade is nearly level. From the intersection at the top of the hill down towards Dillingham for a distance of 200 feet there is a 5 per cent. grade; the next 400 feet is a 7 per cent. grade; from there, the next 400 feet east on Kings highway, there is about a 1½ per cent. grade. Kings highway is 27 feet wide from curb to curb, and Dillingham is 30 feet wide.

The boys first named, on their way to Morris Loewenberg's home, had crossed from the south side of Kings highway to the north side, and there stopped, one of them having stepped in some water or mud. They were then on the corner of Dillingham and Kings highway, on the east side of Dillingham. About that time they decided to retrace their steps and go back to the school to telephone Mrs. Loewenberg to come after them. As they attempted to cross from the north to the south side of Kings highway, Herbert Hall led the way, then Edwin Terry, and then Morris Loewenberg. Hall reached the curb or sidewalk on the south side, Terry was about 2 feet from the south side, and Morris Loewenberg about 6 feet from the south side, when he was struck by defendant's car, driven by Sanders Fowler, Jr., a minor, about fourteen and one-half years of age. Morris Loewenberg was about the same age.

When Sanders Fowler, Jr., turned his car into Kings highway at Line avenue, he was 670 feet from the place of the accident. At that time his car was seen by some of the boys, and he saw some boys on both the north and south sides of Kings highway at Dillingham street, and some of the boys still in the street. When he had traversed half the distance, he saw a boy cross from the north to the south side of Kings highway at Dillingham. He did not see the boy any more until he was about a car's length from the west intersecting line of Dillingham, when he discovered the boys in the street, as above described, and Loewenberg almost directly in a line with his moving car. The car was 14 to 15 feet long, and the distance from the car to Morris Loewenberg at that time was therefore about 40 to 45 feet. Sanders Fowler, Jr., immediately applied the brakes on the car, which were working, as is shown by the fact that the car skidded, leaving the imprint of the tires on the pavement for a distance of 40 to 45 feet before it struck Morris Loewenberg, and continued east from that point to a point near a telephone pole about 40 feet east of the point it impacted young Loewenberg, where the car was stopped. The day was bright, and the pavement dry. There was no obstruction of any kind to prevent either the driver of the car or the injured boy from seeing each other from the time the car turned into Kings highway until the time of the accident. However, the Loewenberg boy apparently never saw the car nor did any of the other boys see the car after it first came into Kings highway until it traversed half the distance. None of them saw it again until almost the very instant it struck young Loewenberg. Loewenberg did not see the car when it struck him, for his side and back were towards the car at the time. Sanders Fowler, Jr., did not see the Loewenberg boy enter the street, and only saw him in the street when he (Fowler) was 10 to 15 feet west of the west line of Dillingham street.

There were no other cars in sight on this street at that time, and the only other vehicle on the street was an ice wagon, pulled by two mules. The wagon was close to the north curb of Kings highway, the north wheels being only one to two feet from the curb. The wagon was standing still on the north side of Kings highway, a few feet east of the east intersecting line of Dillingham with Kings highway.

Sanders Fowler, Jr., testified that he was traveling 20 to 25 miles per hour; the other witnesses fixing the speed at from 30 to 40 miles per hour. Henry Vatter, an expert on the distance a car the kind and make driven by Fowler can be stopped at different speeds, fixed the distances as follows: 37 feet, if traveling 20 miles per hour; 55 feet, if traveling 30 miles per hour; 155 feet, if traveling 40 miles per hour.

After the brakes took effect on the car, it traveled more than 80 feet, as shown by the skid marks on the pavement. This evidence, coupled with the oral testimony as to speed, justifies us in holding that defendant's car was traveling at a rate of 35 miles per hour at the time the brakes were applied.

Section 5 of Act No. 296 of 1928 fixes the speed limit when passing schools during school hours, or while children are coming to or leaving school during opening or closing hours, at 15 miles per hour. It is not shown that the city of Shreveport has passed any law different from this, and there can be no dispute over the application of this speed limit, under Act No. 296 of 1928, as amended by Act No. 2 of 1929 (Ex. Sess.). It is also provided in this section that any person driving a vehicle on a highway shall drive at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and of any other condition then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb, or property of any person. Therefore, under this law, regardless of any specific limit per mile fixed by law, the speed of the car driven by Sanders Fowler, Jr., was excessive, and it was gross negligence for him to attempt to pass the

intersection, the point of the accident, at such speed, and especially so since he was familiar with the fact that the school children used this intersection as a crossing place, and that they had only a few moments before been dismissed from school at the same time he had.

The courts of this state have repeatedly held that a motorist, on approaching an intersection, must reduce the speed of his car to a speed which will give him such control of his car as to allow him to stop the car at the shortest possible notice. One street does not have to entirely cross another to be an intersection, under Act No. 296 of 1928. It is defined as a place where two or more highways or streets join one another.

The evidence is without conflict that, at the time Morris Loewenberg attempted to cross from the north to the south side of Kings highway, the car of defendant was several hundred feet from the intersection. This is the testimony of the boys who testified for plaintiff, and is corroborated by the defense witness, Harvey, the iceman. He testified that, when Loewenberg started back across the street, the car was not very far from him. He refused to fix the distance in feet. Later in his testimony, he said Loewenberg started back when the car was halfway up the hill. This is corroborated by Sanders Fowler, Jr., who testified that, when about half way between the intersection of Line avenue and Kings highway, and the intersection where the accident occurred, he saw one boy walking from the north side to the south side of Kings highway. There is no contradiction of the testimony that only three of the boys went back across the street, namely, Herbert Hall, Edwin Terry, and Morris Loewenberg; that Hall was in the lead, Terry next, and then Loewenberg; and that Terry was only about 2 feet behind Hall and Loewenberg about 4 feet behind Terry. Therefore only a very short space of time elapsed after young Fowler saw Hall enter the intersection until the other two entered. Hall made it across, Terry lacked 2 feet, and Loewenberg about 6 feet. Therefore Terry traversed 25 feet of the intersection and Loewenberg 21 feet before they were seen by Sanders Fowler, Jr. There was no obstruction, and the only reason he did not see them before he did was because he was not keeping a proper lookout. The law requires that he keep a lookout, and he was required to exercise extraordinary care on approaching an intersection used by pedestrians in crossing the street. He was required to keep a constant lookout for pedestrians, and especially so at this particular intersection, which he knew would be used by the very boys he was in school with, in going to their homes, and who had only a few minutes before been dismissed from the school. He was guilty of negligence in not keeping a proper lookout on approaching this intersection.

The negligence in operating the car at an excessive rate of speed and in not keeping a proper lookout is actionable, and Sanders Fowler, Jr.'s, father, one of the defendants herein, is liable for the damages caused to plaintiffs for the injury to their minor son, Morris Loewenberg, unless the minor, Morris Loewenberg, was guilty of contributory negligence, which was the proximate cause, or unless the doctrine of last clear chance does not apply.

Defendant contends that young Loewenberg was guilty of contributory negligence in that he ran out into the street and stopped too close to the on-coming car for Fowler to prevent striking him. We have found that, at the time Loewenberg entered the street, defendant's car was some distance, nearly halfway to the intersection of Line avenue and Kings highway, a distance of 670 feet. Therefore the car was nearly 300 feet away at that time. When we find defendant's car traveling 35 miles per hour and that Loewenberg had traversed 21 feet of the intersection, after entering it, it is only a question of calculation to find the approximate distance of defendant's car from Loewenberg at the time he entered the intersection. If Loewenberg walked across the intersection, his rate of speed would not have exceeded 4 miles per hour, and defendant's car would have been traveling nearly nine times as fast, and would have been 189 feet, plus 40 feet, the distance he admits he was from Loewenberg when he discovered him standing 6 feet from the curb, or 229 feet from Loewenberg at the time Loewenberg left the curb. If Loewenberg had been running at a rate of 8 miles per hour, the car would have been 90 feet, plus 40 feet, or 130 feet, from him when he left the curb. In either instance, Sanders Fowler, Jr., could have stopped the car and prevented it from striking Loewenberg.

Defendant seriously contends that young Loewenberg was running across the street chasing Terry, and his contentions are borne out by two witnesses, one of whom was the iceman. All the other boys with Loewenberg, including the two who crossed the street with him, are positive that he was walking. The conflict is irreconcilable, and the lower court found that he was chasing Terry across the street, and we are not justified in disturbing that finding on the facts in the record. We think, however, it is immaterial to a decision in the case.

A boy standing on the south side of the street threw an orange peel at Terry. It missed him, and Loewenberg stopped, with the apparent intention of picking it up. Before he could do so, he was run into by the car. He had never stooped, and was hit by the car almost the instant he stopped.

Whether he had stopped or not, he would have been hit by the car.

■■■ Where the plea of contributory negligence is set up, the burden rests on defendant to sustain it. We think defendant has failed to sustain the burden in this case. A pedestrian has the same right to a street at an intersection used by pedestrians to cross a street as a motorist has. The same rule applies to pedestrians in crossing a street at an intersection as applies to a motorist, and when a pedestrian attempts to cross a street at an intersection, a reasonable distance ahead of a motorist, it is the duty of the motorist to allow him to pass, and cannot legally run him down. Whether young Loewenberg ran or walked across the street, he was legally in the street, with the same rights as defendant's car, and it was the duty of defendant to have stopped his car, if necessary, or to have reduced the speed thereof, and allowed him to pass.

When Loewenberg entered the street, there was sufficient distance between him and the car of defendant for the car to have been entirely stopped before striking him, but, if we should concede that it was negligence for young Loewenberg to run into the street, we cannot say it was such negligence as to bar his recovery.

■■In the case of Shields v. Succession of Hodge, 13 La. App. 546, 128 So. 530, 533, this court, in dealing with a plea of contributory negligence, where there was a collision between two automobiles at a street intersection, and defendant pleaded contributory negligence on the part of plaintiff in denying the plea, this court, through Judge Odom, as the organ of the court, said:

"The testimony as a whole does not warrant the holding that plaintiff was exceeding the speed limit at the time of the collision. But even if it be conceded that she was, and, therefore, guilty of negligence in that respect, it does not necessarily follow that, as a matter of law, she cannot recover. Counsel in their brief say that contributory negligence defeats recovery, even though the negligent act consisted in the violation of a statute or ordinance. That is true, of course, if plaintiff's negligence in that respect contributed to the accident and injury as the proximate cause thereof. Contributory negligence defeats recovery in cases of this kind. But a plaintiff may be guilty of negligence and still recover, because a negligent act may not amount to 'contributory negligence' in its legal sense, and it is only 'contributory negligence' in its legal sense which defeats recovery.

" 'Contributory negligence in its legal significance is such an act or omission on the part of plaintiff, amounting to an ordinary want of care, as concurring with the negligent act of defendant is the proximate cause or occasion of the injury complained of.' 29 Cyc. p. 505; 28 Cyc. p. 38.

" 'The mere collateral wrongdoing of the injured person cannot of itself defeat the right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar recovery.' Blashfield's Encyclopedia of Automobile Law (1927) vol. 2, p. 1209. See, also, Words and Phrases, First, Second and Third Series, Contributory Negligence.

"The negligence of plaintiff, to bar recovery, must have in it the element of proximate cause. None such is shown here. Defendant is liable."

■ The proximate cause of the accident was the excessive speed of defendant's car and the failure of the driver thereof to keep a proper lookout. However, if we concede that young Loewenberg was guilty of contributory negligence such was would ordinarily bar his right to recover in this case, he could still recover for the reason that defendant had the last clear chance to avoid the accident. Morris Loewenberg was oblivious of the approach of defendant's car. He was not facing in the direction of the on-coming car, all of which could have been seen by defendant's driver for a distance of from 130 feet to 229 feet, depending upon whether Loewenberg ran or walked into the street. If Sanders Fowler, Jr., had exercised the care required of him by law, he would have seen Loewenberg and could have prevented the accident. The record discloses he could have veered to the left and missed Loewenberg, or that he could have stopped his car, even at the fast speed he was traveling, or if he had reduced the speed of his car, he would have prevented the accident.

■ Defendant contends that, in applying the doctrine of last clear chance, we should require plaintiff, in order to recover, to prove that Sanders Fowler, Jr., after seeing the danger, could have avoided the injury. This seems to be the accepted rule in some jurisdictions, but the rule in Louisiana is that, if defendant did not see the danger, but by the exercise of ordinary care could have seen the danger in time to avoid the injury, the doctrine of last clear chance will apply. Norwood v. Bahm, 14 La. App. 261, 129 So. 183 (writ refused); Guillot v. Baton Rouge Yellow Cab Co., 18 La. App. 202, 138 So. 219; Guinn v. Kemp et al., 18 La. App. 3, 136 So. 764; Tassin v. N. O. Pub. Ser., 19 La. App. 456, 139 So. 695 (writ refused); Dobrowolski v. Henderson, 15 La. App. 79, 130 So. 237; Jones v. Chicago, R. I. & P. Ry. Co., 4 La. App. 457, writ granted and affirmed in 162

La. 690, 111 So. 62; Rogers v. Louisiana Ry. & Nav. Co., 143 La. 58, 78 So. 237; Tyler v. Gulf, C. & S. F. Ry. Co., 143 La. 178, 78 So. 438; Hodges v. Davis, 7 La. App. 327; McClanahan v. Vicksburg, S. & P. Ry. Co., 111 La. 782, 35 So. 902; Jones v. Mackay Tel. Cable Co., 137 La. 121, 68 So. 379; McGuire v. Vicksburg, S. & P. Ry. Co., 46 La. Ann. 1543, 16 So. 457.

When the car struck Morris Loewenberg, it caught him on the bumper and carried or dragged him a distance of approximately 40 feet, where he was thrown to the pavement in an unconscious condition. He was taken to the sanitarium, where he remained for one week and then moved to his home, where he was confined to his bed for a period of three or four weeks, at which time he had sufficiently recovered to return to school. He was unconscious practically the entire time he was in the sanitarium and at intervals after returning to his home. He undoubtedly suffered a great deal. He was bruised and cut on the head and severely shocked. The blow on his head left a knot, caused by an enlargement of the frontal bone of the head. There were no broken bones. We think the evidence fails to disclose any material difference in his nervous system since the accident, as compared with his condition prior to the accident, and that the testimony fails to show that chorea, or St. Vitus' Dance, from which he is now suffering, was caused by the accident or aggravated by the injury received in the accident.

For pain, suffering, and shock, we think a fair judgment will be $1,000. There is no proof of worry or grief by the mother and father and nothing in the record to justify a judgment on this item. The father, Ignatz Loewenberg, incurred bills for the treatment of his minor son in the sum of $490, consisting of items of doctor's bills, sanitarium and nurse's bills, which amount he is entitled to recover.

Plaintiffs are entitled to have judgment in the above amounts against the defendant Dr. Sanders Fowler, and likewise to have judgment against the two other defendants, the insurance companies, in solido with Dr. Fowler, unless they are relieved from liability under the policy of insurance issued to Dr. Fowler, for the reason that Sanders Fowler, Jr., the driver of the car, was under the age limit allowed by the provisions of the policy.

On August 17, 1930, the Fidelity Union Casualty Company issued to Dr. Sanders Fowler a policy of insurance, and among other things, insured him against liability for bodily injuries or death of another caused by said automobile, in the amount of $10,000 for one person. Under the clause of the policy limiting the liability, the policy states that it does not indemnify the assured against loss from liability on account of any accident caused by the automobile or damage to the automobile, while being used or maintained in any of the following conditions: "(a) Driven or operated by any person in violation of any provisions of law as to age or under the age of 16 years when no legal limit is fixed." The Commercial Casualty Company took over the policy above described from the Fidelity Union Casualty Company, and agreed to assume all obligations of said company.

Ordinance No. 72 of 1922 of the city of Shreveport provides that "it shall be unlawful for the owner of any automobile to permit same to be driven by a minor under the age of 16 years, upon the public streets of the City of Shreveport."

The defendant insurance companies contend that this ordinance is in effect, and that, when Sanders Fowler, Jr., who was fourteen and one-half years of age, drove the car which caused the damage, he was driving in the car in violation of a provision of law as to age, and that they are therefore not liable under the limitation clause of the policy.

Act No. 296 of 1928, as amended by Act No. 2 of 1929 (Ex. Sess.) of the state of Louisiana, section 73, fixes the age limit of persons permitted to operate a motor vehicle on the highways of the state at fourteen years. In the title of Act No. 296 of 1928 we find the following: " * * * To authorize the governing authorities of parishes and municipalities to adopt rules and regulations controlling vehicular traffic over their roads and streets supplementary to and not in conflict with this Act. * * *"

Section 5 (c) of said act provides:

"Local authorities in their respective jurisdictions are hereby authorized in their discretion to increase the speed which shall be prima facie lawful upon through highways at the entrances to which vehicles are by ordinance of such local authorities required to stop before entering or crossing such through highways.

"Local authorities shall place and maintain upon all through highways upon which the permissible speed is increased adequate signs giving notice of such special regulations and shall also place and maintain upon each and every highway intersecting any said through highway, appropriate stop signs and reflectors so placed as to be illuminated by the headlights of an approaching vehicle or by the street lights."

Section 22 provides what to do on approach of police or fire department vehicles.

Section 35 provides: "Local authorities except as expressly authorized by Section 5 (c) and 22 shall have no power or authority to alter any speed limitations declared in this Act or to enact or enforce any rule or regulation contrary to the provisions of this Act;

except that local authorities shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or sema-phores or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one-way traffic upon certain highways and may regulate the use of the highways by processions and assemblages. Local authorities may also regulate the speed of vehicles in public parks and shall erect at all entrances to such parks adequate signs giving notice of any such special speed regulations."

Section 89 provides: "All prosecutions now pending in any of the courts of this State for violation of the presently existing law shall be maintained and proceeded with according to law, and any violation of said existing law shall not be affected by this Act, and the prosecution therefor shall be proceeded with under the terms of existing laws in force at the time of the taking effect of this Act. The terms, provisions, and penalties imposed by this act shall not be deemed or construed to apply to any municipality or incorporated town or city of more than 15,000 inhabitants, when such incorporated town, city or municipality shall have heretofore adopted or shall hereafter adopt any ordinance or ordinances regulating or controlling traffic within the limits thereof."

Act No. 2 of 1929 (Ex. Sess.) amended section 89 of 1928, and now reads as follows: "All prosecutions now pending in any of the Courts of this State for violation of the presently existing law shall be maintained and proceeded with according to law, and any violation of said existing law shall not be affected by this Act, and the prosecution therefor shall be proceeded with under the terms of existing laws in force at the time of the taking effect of this Act."

The result of the amendment was to strike out of section 89 of 1928 the following clause: "The terms, provisions, and penalties imposed by this act shall not be deemed or construed to apply to any municipality or incorporated town or city of more than 15,000 inhabitants, when such incorporated town, city or municipality shall have heretofore adopted or shall hereafter adopt any ordinance or ordinances regulating or controlling traffic within the limits thereof."

The defendant Fowler contends that, since Act No. 2 of 1929 (Ex. Sess.), amending section 89 of 1928, as above shown, the ordinance 72 of 1922, of the city of Shreveport, fixing the age limit of drivers at sixteen years, has been superseded, and that the age limit for drivers of automobiles in the city of Shreveport, since the amendment, is fourteen years. The insurance companies, to sustain their contention, rely upon the cases of Maryland Casualty Co. v. Friedman (C. C. A.) 45 F.(2d) 369, and United States Fid. & Guar.

Co. v. Guenther, 281 U. S. 34, 50 S. Ct. 165, 166, 74 L. Ed. 683, 72 A. L. R. 1064.

The Maryland Casualty Company Case is not in point. The question there was only the interpretation of a state statute fixing different ages in the same act for a chauffeur and a driver of a car. The question of conflict between municipal ordinance and state statute was not at issue.

The Guenther Case is likewise not in point, for the reason there was no conflict between a state statute and city ordinance. In that case the state prohibited the employment of a child under sixteen years of age to operate an automobile. The municipal ordinance prohibited any one under eighteen years from operating an automobile. It can be readily seen the state statute dealt with the employment of a child under sixteen and did not attempt to fix the age a child should be before operating an automobile on the highways. The court, in passing on this case, said: "Plainly the general statute, which merely forbids the employment of minors under sixteen years to operate automobiles, does not prevent the city in the exercise of its delegated power to regulate the use of its streets, from prohibiting the operation of automobiles by minors under eighteen years of age. Such a regulation merely supplements locally the provision of the general statute and is not in conflict with it."

The court cited Hiedle v. Baldwin, 118 Ohio St. 375, 161 N. E. 44, 58 A. L. R. 1186, which case is authority for a municipality to pass any ordinance in addition to the state law, and not in conflict with it. There can be no question about the right of a city to pass ordinances to regulate traffic covering different and additional matters not covered in the state statutes and not in conflict with the state statute. Such a right is granted cities under its police powers.

The title of Act No. 296 of 1928 and Act No. 2 of 1929 (Ex. Sess.) shows the intent and purpose of the acts is to pass laws regulating the traffic in all particulars on the highways of this state and to authorize municipalities, etc., to adopt rules and regulations only that are supplementary and are not in conflict with the act. The plain object of the act, as expressed in its title, as well as in the body of the act, is to make a general law regulating traffic on the highways of this state and granting to municipalities, etc., the right to pass such other laws under their police powers which they might deem necessary, whenever such laws are not provided by this act. The act of 1928 exempted cities of 15,000 population. The act of 1929 took away the exemption and made the law apply to all municipalities, regardless of the population. "Supplementary" plainly means in this act the right to add to for that particular locality. For instance, if the act

is silent on the duty to stop before entering a right of way street, the city could pass an ordinance supplementary to the act, and provide that a motorist stop before entering a right of way street. Such a law would be supplementary and not in conflict with the act. But, if the act should provide that a motorist reduce his speed to 5 miles per hour before entering a right of way street, the city could not provide that he must stop. Such a law would not be supplementary, but would be in conflict with the state act. The word "highway" in the act is defined and includes public streets in a municipality. In the case of Guinn v. Kemp, 18 La. App. 3, 136 So. 764, 765, the First Circuit Court quoted from Elliott on Roads and Streets (3d Ed.) subject Streets, § 19, p. 21; Dillon on Municipal Corporations, vol. 2, subject Streets, pp. 805 and 806, §§ 676 and 680, to the effect that, speaking generally, all streets must be said to be highways. It continued: "All highways are not streets, but the streets in question may be regarded as coming within the law on that subject. * * * The term 'local authorities' is defined, in the act (section 2) to mean, 'Every parish, municipal and other local board or body having authority to adopt local police regulations under the constitution and laws of this State.' Section 5, subsection (c), section 18, subsection (b), and section 35 makes the traffic and speed ordinances, and regulations of local authorities, subservient to the act, except in particular and specified instances."

The specified instances referred to above are where the municipal authorities are specially authorized to pass specific laws contrary to the provisions of the act, and specifically sets out that adequate signs shall be placed giving notice of such special regulations which are different from the state act. These specified instances set out in the act are in addition to the rules and regulations a municipality might make supplementary to the act, and not in conflict with it. The specified instances, however, are the only instances in which the municipality can pass ordinances in conflict with the provisions of the act, and no special right is granted by the act to municipalities to fix the age limit of drivers of automobiles at a different age than fourteen years provided for in the act. To fix it at sixteen years by the municipality would be to make a law directly in conflict with the state act.

When the law of the state provides that it is unlawful for a person under fourteen years of age to drive an automobile on the highways of the state, it is equivalent to stating that it is lawful for a person over fourteen years of age to drive an automobile on the highways of the state, and therefore an ordinance of a municipality that attempts to make it unlawful for a person over fourteen years to drive on the highways of the statute is in conflict with the general law, and of no effect. Schneiderman v. Sesanstein, 121 Ohio St. 80, 167 N. E. 158, 64 A. L. R. 981.

Whenever the state sees fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state, the entire control over whatever phases of the subject are covered by state legislation ceases in so far as municipal or local legislation is concerned. Atlas Mixed Mortar Co. v. Burbank, 202 Cal. 660, 262 P. 334, 336.

The state of Louisiana saw fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state and every phase of the subject covered by that act (No. 296 of 1928 and amendments) ceased in so far as municipalities were concerned. Any ordinances passed prior to the passage of the general act which are contrary to its provisions and in conflict therewith are superseded by the general act, and are no longer law.

No doubt Act No. 296 and amendments thereto was passed in the interest of motorists. The various rules, regulations, and ordinances in the many villages, towns, and cities of the state upon the various subjects of speed, lawful age to drive, etc., and penalties, were no doubt numerous, conflicting, and confusing, and oppressive to the motorist. The passage of Act No. 296 of 1928 and Act No. 2 of 1929 (Ex. Sess.) has done away with the numerous conflicts and made the law uniform over the entire state.

The age limit fixed by the state law to lawfully drive an automobile is fourteen years. Sanders Fowler, Jr., was fourteen years and seven months at the date of the accident, therefore the defendant insurance companies are liable on the policy of insurance issued to Dr. Sanders Fowler, and plaintiffs are entitled to judgment against them both in solido with Dr. Fowler.

There is an agreement in the record between defendant Fowler and the insurance companies that, if judgment should be awarded against the insurance companies, Dr. Fowler should have judgment against them likewise for the sum of $500, as attorney's fees; if the judgment was against the plaintiffs and the insurance companies held liable on the policy, Dr. Fowler should have judgment against them for $750, as attorney's fees.

The lower court rejected plaintiffs' demand, and held the insurance companies liable on the policy to Dr. Fowler, and awarded Dr. Fowler $750 judgment against the insurance companies, as attorney's fees. This part of the judgment will have to be amended by reducing it to $500.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court against the plaintiffs be reversed, and there

is now judgment in favor of plaintiffs, Ignatz Loewenberg and Theresa Loewenberg, and against defendants, Dr. Sanders Fowler, Fidelity Union Casualty Company, and Commercial Casualty Insurance Company in solido, in the sum of $1,000 for the use and benefit of the minor, Morris Loewenberg, and in favor of Ignatz Loewenberg against the same defendants in solido in the sum of $490, with legal interest on both amounts from judicial demand until paid, and all costs of this suit.

It is further ordered, adjudged, and decreed that Dr. Sanders Fowler have and recover judgment against the defendants Fidelity Union Casualty Company and Commercial Casualty Company in solido in the same amount as the judgment rendered against him in favor of plaintiffs.

It is further ordered, adjudged, and decreed that the judgment in favor of Dr. Sanders Fowler against the Fidelity Union Casualty Company and Commercial Casualty Insurance Company in the sum of $750 attorney's fees be amended by reducing the amount of attorney's fees to $500; and, as thus amended, the judgment be affirmed.

MILLS, J., recused.